208 N.J. Super. 399 (1986)
506 A.2d 43
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD RICHARDSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1986.
Decided February 28, 1986.
*402 Before Judges MORTON I. GREENBERG,[1] J.H. COLEMAN and LONG.
Daniel V. Gautieri, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney; Daniel V. Gautieri of counsel and on the brief).
Raymond S. Gurak, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Raymond S. Gurak of counsel and on the brief).
The opinion of the Court was delivered by J.H. COLEMAN, J.A.D.
This appeal raises questions respecting the construction and application of N.J.S.A. 2C:44-5 b(2). The primary question presented is whether § 5 b(2) should be construed to give defendant a credit for time served on a previous sentence so as to reduce a term of parole ineligibility imposed for a separate offense at a subsequent sentencing. In a jury trial, defendant was found guilty of third degree receiving stolen property, an automobile, contrary to N.J.S.A. 2C:20-7 and N.J.S.A. 2C:20-2 b(2)(b). He was sentenced on November 15, 1984 to a custodial term of five years and required to serve two and one-half years before becoming eligible for parole for the theft offense which occurred on February 23, 1983. The sentence was made to run consecutively to a three year custodial term imposed on December 16, 1983. We hold that the credit cannot be used in remission of the subsequent sentence.
The facts essential to our decision are not complicated. Two Newark police officers, Henry Moore and James Evans, received *403 a radio dispatch on February 23, 1983 at approximately 2:30 or 2:45 p.m. regarding a green Cadillac that was in the process of being "stripped" at 455 Springfield Avenue. Upon arriving at this location approximately two or three minutes later, the officers observed an abandoned tavern with a parking lot in the rear. While searching the lot, the officers received information that the suspect had fled with the Cadillac in a northerly direction along Jacobs Street.
The officers drove north along Jacobs Street until they saw a green Cadillac, which matched the description received from the radio dispatch, parked at the corner of Gold Street. Officer Moore, who was approximately 30 feet from the Cadillac, observed an individual, later identified as defendant, exit the vehicle and flee into a rear yard on Jacobs Street. Defendant, who had been the only occupant in the vehicle, fled over fences and through several rear yards while Officer Moore chased him on foot. Moore, who never lost sight of defendant during the five minute chase, eventually apprehended defendant and placed him under arrest.
The officers then examined the Cadillac and observed that the plastic covering surrounding the steering column had been broken, the ignition had been partially broken out of the dashboard and the radio had been partially removed from the dashboard. Although Officer Moore did not attempt to drive the Cadillac, it appeared operable to him. To the best of his recollection, all the tires were on the car. Pursuant to normal police practice, the officers called a towing service to remove the Cadillac for impoundment.
Reynolds J. Reino, the president of A.L.O. Transportation, was the owner of the green Cadillac on February 23, 1983. The car, which was locked, disappeared while parked in front of his Irvington office on the afternoon in question. He reported the theft to the Irvington Police Department. After being advised that his car was at Dante's Brothers Towing in Newark, Reino arranged to have it released. When the Cadillac was released, *404 Reino observed that its tires were missing, the radio and ignition had been "ripped out," the trunk lock was broken and there was a hole beneath the door lock. He maintained that the car was not in operable condition. Reino did not know defendant and had never given him permission to use his car.
Defendant did not testify but his employer, Nunzio Martucci, testified as a witness on his behalf. Martucci, who owns a mobile ice cream company, maintained that defendant worked with him selling ice cream on the streets of Newark from 8:30 a.m. until approximately 2:30 p.m. on the day in question. Aside from selling ice cream, defendant also worked as a mechanic on Martucci's trucks.
On this appeal, defendant seeks a reversal on a variety of grounds. He contends for the first time on this appeal that the State was required to, but failed to prove as an element of the crime, that the automobile was "movable property." This contention is grounded in the owner's testimony that the tires were missing and that the Cadillac was not in operable condition when it was released to him from Dante's storage yard.
N.J.S.A. 2C:20-7, which defines the offense of receiving stolen property, provides in pertinent part:
a. Receiving. A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen. It is an affirmative defense that the property was received with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.
The term "movable property" is defined in N.J.S.A. 2C:20-1 e as
... property the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location. "Immovable property" is all other property.
When the two statutes are read together, it becomes apparent that the Cadillac was "movable property" regardless of whether it had tires or could be moved by its own power. Clearly, it was capable of being moved from one location to another. An inoperable automobile remains movable property *405 even though its value may be somewhat diminished. In any event, as we have observed earlier, the jury could have determined from the evidence that defendant rendered the vehicle inoperable in the process of stripping it and that the tires disappeared during the vehicle's impoundment. We therefore find that this contention is unpersuasive.
We are completely satisfied from our study of the record that sufficient evidence was presented to permit the jury to find that the State had proven each element of the offense beyond a reasonable doubt. State v. Reyes, 50 N.J. 454 (1967); R. 3:18-1. At trial, defense counsel argued that the State failed to prove that defendant knew the automobile was stolen. The trial judge correctly denied the motion for a judgment of acquittal because the defendant's action of sitting in an automobile which had the ignition punched out and had a damaged steering column and dashboard, along with his flight from the police, constituted sufficient evidence from which the jury could find beyond a reasonable doubt that defendant knew or believed that the automobile had probably been stolen. See Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). We have applied the same standard as did the trial judge in reaching our conclusion that the motion for a directed verdict was properly denied. State v. Moffa, 42 N.J. 258, 269 (1964).
Defendant also contends that the judge erred by not sua sponte charging joyriding, or unlawful taking of means of conveyance, N.J.S.A. 2C:20-10, as a lesser included offense. We find a complete absence of any rational basis in the evidence which even remotely suggests that defendant only intended to drive the car for pleasure. See State v. Choice, 98 N.J. 295, 299-300 (1985); State v. Saulnier, 63 N.J. 199, 206-207 (1973). The unlawful taking of a means of transportation, or joyriding, is not a lesser included offense of receiving stolen property. The elements of the two offenses are different. See State v. Ghaul, 132 N.J. Super. 438, 441 (App.Div. 1975). The unlawful taking of a means of transportation and joyriding *406 does not involve stripping of the motor vehicle as was demonstrated in the present case.
Defendant further contends that the trial judge committed reversible error by failing to have testimony read back to the jury concerning the time of defendant's arrest. During the course of the jury's deliberations, the trial judge received a note from the jury which simply read, "[t]ime of arrest." The trial judge informed counsel of the note and expressed his feeling that it was unnecessary to have a read back of testimony. He then asked counsel whether they agreed with him that Officer Moore testified to the effect that he received a radio dispatch at 2:30, that it took two to three minutes for him to respond, and that he located the vehicle along with defendant in front of an abandoned tavern at 455 Springfield Avenue. Defense counsel replied that he thought that was a "fair summary" of the testimony, but that he would prefer to have that portion of Officer Moore's testimony regarding the arrest read back to the jury. The trial judge refused defense counsel's request since the jury had not asked for a read back of testimony. The judge further stated that he intended to inform the jury that defendant was apprehended five minutes after the chase ensued. Defense counsel noted his objection for the record. Thereafter, the trial judge instructed the jury in the following manner:
Ladies and gentlemen, you have sent out a question which reads, "Time of arrest." There is no direct testimony as to the exact time of the arrest. There is, however, the testimony of Officer Moore that a dispatch was received at 2:30 in the afternoon; that he and his partner arrived at 455 Springfield Avenue some two to three minutes thereafter; that a chase ensued and that the defendant was apprehended in five minutes.
The decision of whether to grant a jury's request for a read back of testimony rests within the sound discretion of the trial judge. However, such a request should be freely granted absent some unusual circumstance. State v. Wilkerson, 60 N.J. 452, 460 (1972); State v. Garrigan, 126 N.J. Super. 442, 446 (App.Div. 1973), aff'd o.b. 64 N.J. 287 (1974). In the present case, the jury did not specifically request a read back of testimony. Of course, the distinction between on the one hand, *407 asking a question based on the evidence, and on the other hand, asking to hear certain testimony read, is a distinction of form, not substance. United States v. Zarintash, 736 F.2d 66, 70 (3d Cir.1984); United States v. Rabb, 453 F.2d 1012, 1014 (3d Cir.1971). Undoubtedly, the wiser course dictated a read back of those portions of Officer Moore's testimony relevant to the time of defendant's arrest, rather than attempting to summarize them. A summarization of testimony by the trial judge raises the possibility that the jury may be given an erroneous view of the testimony, and is therefore much less desirable than having the actual transcript read. United States v. Rabb, supra, 453 F.2d at 1015.
Even though there was no testimony regarding the exact time of defendant's arrest, the trial judge nevertheless attempted to answer the jury's question by summarizing Officer Moore's testimony. Unfortunately, his summarization was inaccurate. Thus, although Officer Moore testified that he received the radio dispatch at approximately 2:30 or 2:45 p.m., the trial judge informed the jury that the dispatch was received at 2:30 p.m. Moreover, the trial judge's summarization failed to include the fact that the officers located the stolen Cadillac and defendant on Gold Street, rather than on Springfield Avenue.
While the trial judge's summarization contained some minor inaccuracies, we are nonetheless satisfied that the minor inaccuracies did not have the capacity to mislead the jury. It is extremely unlikely that an error regarding the time of defendant's arrest contributed to the verdict. State v. Macon, 57 N.J. 325, 340 (1971). Moreover, when the trial judge asked counsel whether they agreed with his summarization, defense counsel replied that he thought it was a "fair summary." Trial errors acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal. State v. Simon, 79 N.J. 191, 205 (1979); State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974), certif. den. 65 N.J. 574 (1974), certif. den. 68 N.J. 284 (1975). In any event, the trial judge informed the jury during *408 his charge that they were the sole judges of the facts and their recollection of the testimony was controlling, rather than any comments he might make on the facts. In administering the criminal law, our courts "must rely upon the jurors' ability and willingness to follow ... instruction[s] without cavil or question." State v. Manley, 54 N.J. 259, 270 (1969). There can be no assumption that the jury did not faithfully follow the court's instruction. Id. at 271; State v. Whitlow, 45 N.J. 3, 22-23 (1965).
Defendant next contends that the sentence imposed represents an abuse of discretion. We find this contention lacks merit. We are satisfied that the sentence complies with the guidelines established in State v. Yarbough, 100 N.J. 627 (1985); State v. Roth, 95 N.J. 334 (1984); State v. Hodge, 95 N.J. 369 (1984) when the sentencing transcript is read in conjunction with the presentence report and the written reasons for the sentence.
Finally, defendant contends that pursuant to N.J.S.A. 2C:44-5 b(2) he is entitled to an additional credit of 336 days against the present sentence. The present offense of receiving stolen property occurred on February 23, 1983. The sentence for that offense was imposed on November 15, 1984. At the time of sentencing for the present offense, defendant was serving a three year term of imprisonment which had been imposed on December 16, 1983 for a third degree crime of receiving stolen property which occurred on March 28, 1980. The present sentence was made to run consecutively to the previous sentence.
The pertinent portion of N.J.S.A. 2C:44-5 b provides:
b. Sentences of imprisonment imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:
* * * * * * * *

*409 (2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be serves .... [Emphasis added]
Vol. II, The New Jersey Penal Code: Commentary, Final Report of the New Jersey Criminal Law Revision Commission (1971), provides:
Subsection b is addressed to the problem of a sentence of imprisonment imposed upon a person who is already serving a term under a sentence imposed for an earlier offense.... As to persons already serving a prior term, ... [w]hether the new term is to run concurrently or consecutively, the defendant must be credited with time served under the first sentence in determining the permissible aggregate length of the term or terms remaining to be served .... [Id. at 336; emphasis added]
From a historical perspective, N.J.S.A. 2C:44-5 b(2) was enacted as part of the L. 1978, c. 95 which was approved on August 10, 1978 and became effective on September 1, 1979. When the Criminal Code was enacted, the Parole Act of 1948, N.J.S.A. 30:4-123.1 et seq., as supplemented and amended by L. 1950, c. 292; L. 1953, c. 277 and L. 1956, c. 102, was still in effect. Under the 1948 Parole Act all inmates were not allowed uniformly to minimize the penal consequences of their sentences. See Cain v. New Jersey State Parole Board, 78 N.J. 253 (1978); State v. Chambers, 63 N.J. 287 (1973); Davis v. Heil, 132 N.J. Super. 283 (App.Div. 1975); aff'd 68 N.J. 423 (1975); Bonilla v. Heil, 126 N.J. Super. 538 (App.Div. 1974); In re Clover, 34 N.J. Super. 181 (App.Div. 1955); In re Fitzpatrick, 9 N.J. Super. 511 (Cty.Ct. 1950); aff'd 14 N.J. Super. 213 (App. Div. 1951). See also Memo Op. Att'y Gen. P-4 (1959); Formal Op. Att'y Gen. No. 8 (1977). Under prior law sentences did not directly determine eligibility for parole. "A complex of factors and computations required by statute, administrative regulations and institutional rules and practices governed the amount of time an inmate was required to serve in prison before he was entitled to parole consideration." N.J. Parole Bd. v. Byrne, 93 N.J. 192, 204 (1983). See also In re Trantino Parole Application, 89 N.J. 347, 370 (1982). Significantly, N.J.S.A. 30:4-123.10, which was part of the 1948 Parole Act, did not automatically *410 require the aggregation of consecutive sentences which were imposed at different times. Those sentences would be aggregated only upon request of a defendant and if the Parole Board acceded to a defendant's request. Davis v. Heil, supra, 132 N.J. Super. at 295. Discretionary aggregation of fixed terms of imprisonment enhanced the lack of uniformity of treatment of inmates. The enactment of § 5 b(2) was intended to be a departure from prior law by requiring the judge to aggregate sentences falling within the coverage of that subsection.
The Legislature was undoubtedly aware that a concurrent term imposed at different times also carried certain penal consequences depending upon the length of the sentence and the date on which the subsequent sentence was imposed. Under both prior law and present law where a subsequent concurrent sentence is substantially less than the former sentence and is imposed relatively soon after the former, the subsequent sentence will not extend the time of imprisonment. But if the subsequent concurrent sentence is either significantly longer than the former or is imposed significantly later than the former, the subsequent concurrent sentence will extend the flat parole eligibility date set on the former sentence. As will be seen from the following illustration, the subsequent sentence although designated a concurrent sentence, in reality is concurrent in part and consecutive in part.
Assume that John Doe was sentenced to State Prison for a term of five to seven years on March 1, 1975 and then on March 1, 1977 he was sentenced to State Prison for a concurrent term of five to seven years. Without regard to commutation, the first sentence would have expired on March 1, 1982. The second sentence commenced on March 1, 1977. Without regard to commutation time, the seven year maximum on the second sentence would not have expired until March 1, 1984. Because the subsequent sentence was not imposed for two years after the former sentence, John Doe's maximum sentence was extended by two years. The date of imposition of the subsequent sentence and the duration of that sentence determine whether *411 the subsequent sentence was really concurrent as stated by the sentencing judge or whether it was concurrent in part and consecutive in part. It is for this reason that the Legislature included consecutive as well as concurrent sentences within the coverage of § 5 b(2).
One of the greatest advantages derived from judicial aggregation of sentences pursuant to § 5 b(2) is the fact that commutation credits earned for good behavior are allowed to accumulate on a progressive or accelerated basis, increasing in direct ratio to the length of sentence. See N.J.S.A. 30:4-140. For example, on a one year sentence 72 days of commutation are allowed, whereas on a five year sentence 444 days are allowed. That is 84 days in excess of the days allowed for one year multiplied by the factor of five for the five year sentence. When two five year maximum terms are aggregated, 996 days of commutation credits are permissible; that represents 108 days more than would be allowed if the two terms were not aggregated. See N.J.S.A. 30:4-140; N.J.A.C. 10A:71-3.2. Therefore, commutation time accrues faster on longer or aggregated terms than on shorter or nonaggregated terms. Since the enactment of the Parole Act of 1979, L. 1979, c. 441, § 27, effective April 21, 1980, the impact of § 5 b(2) and § 5 e(2) have become less meaningful to a defendant, if indeed not contrary to his interest. This takes on added significance because judicial aggregation under N.J.S.A. 2C:44-5 b(2) and N.J.S.A. 2C:44-5 e(2) is calculated differently than by the Parole Board under N.J.S.A. 30:4-123.51 h.[2]
*412 Defendant argues that we should interpret § 5 b(2) in such a way as to confer a double benefit upon him. His sentences presumably have been aggregated by the Parole Board pursuant to N.J.S.A. 30:4-123.51 h, N.J.A.C. 10A:71-3.1 and proper credits were allowed to arrive at an actual parole eligibility date. On this appeal, defendant seeks an order compelling the Parole Board to apply the same credit in remission of the parole disqualification of two and one-half years imposed as part of the subsequent sentence.
We reject defendant's tortured and unreasonable interpretation of § 5 b(2). We must effectuate the legislative plan as it may be gathered from the enactment "when read in the full light of its history, purpose and context...." State v. Gill, 47 N.J. 441, 444 (1966). See also State v. Fearick, 69 N.J. 32, 37 (1976).
Furthermore, defendant's strained and unwarranted construction of the statute would go well beyond the legislative intent of allowing a credit only "in determining the permissible aggregate length of the term or terms remaining to be served" *413 following aggregation. N.J.S.A. 2C:44-5 b(2). Defendant's interpretation, if adopted, would dilute the intended purpose of other statutes permitting consecutive sentences (see N.J.S.A. 2C:44-5 a and State v. Yarbough, supra), and terms of parole ineligibility (see N.J.S.A. 2C:11-3 b and c; 2C:14-6; 2C:43-6 b and c; and 2C:43-7 b and c). Defendant would have us make no distinction between N.J.S.A. 2C:44-5 b(2) and credits for presentence custody under R. 3:21-8. He seeks to have the 336 days credited in such a way as to reduce the two and one-half years of parole ineligibility in the same manner as the three days of presentence custody spent before he was released on bail on the present offense. To accept his contention would require us to violate a well established principle that a defendant is entitled only to credit for time of confinement or detention served for a particular offense. See State v. Allen, 155 N.J. Super. 582, 584 (App.Div. 1978); State v. Council, 137 N.J. Super. 306 (App.Div. 1975).
We perceive that the Legislature intended to mandate judicial aggregation in the limited circumstances outlined in § 5 b(2). The purpose was to require judicial aggregation where N.J.S.A. 30:4-123.10 did not require aggregation by the Parole Board so as to confer upon inmates covered by § 5 b(2) all the benefits to be derived from aggregation while at the same time requiring remission of the aggregated term by the time already served on the prior sentence. In preparing the presentence report required by R. 3:21-2, the Probation Department can contact the appropriate penal institution to obtain the credit time in the same or similar manner as is currently done with regard to jail time under R. 3:21-8. The sentencing judge must expressly state the credit allowed in remission of the aggregated term.
Additionally, we interpret § 5 b(2) as another legislative expression requiring judges to be fully aware of the true meaning of the sentences which they impose. Just as N.J.S.A. 2C:44-1 c(2) requires the judge to know the parole release time associated with a single sentence, see State v. Heisler, 192 *414 N.J. Super. 586, 589 (App.Div. 1984), so, too, must the judge know the raw sentences imposed at different times. This is consistent with the concept that the period of actual imprisonment before being released on parole is the real sentence. State v. Kovack, 91 N.J. 476, 481 (1982). N.J.S.A. 2C:44-5 b(2) is triggered when a three pronged threshold test is met: (1) a defendant has already been sentenced to a term of imprisonment, (2) defendant is subsequently sentenced to another term of imprisonment, and (3) the subsequent sentence is for an offense that occurred prior to the imposition of the first sentence. When the threshold test is met, the sentencing judge must aggregate and allow a proper credit against the aggregate term or terms remaining to be served.
The threshold requirements have been met in the present case because defendant was sentenced on December 16, 1983 to a three year custodial term. Then on November 15, 1984 he was sentenced to a consecutive custodial term of five years with two and one-half years of parole ineligibility. The date of the offense involved in the latest sentence, which was February 23, 1983, predated the December 16, 1983 sentence. The date of the offense involved in the subsequent sentencing is irrelevant.
We construe N.J.S.A. 2C:44-5 b(2) to require a credit to defendant for time served on the prior sentence solely for the purpose of "determining the permissible aggregate length of the term or terms remaining to be served ...," N.J.S.A. 2C:44-5 b(2), where the threshold test has been satisfied. N.J.S.A. 2C:44-5 e(2) provides that regardless of when consecutive terms are imposed, "the terms are added to arrive at the aggregate term to be served equal to the sum of all terms." In the present case, that means that the trial judge must add the first three year term to the second five year term to arrive at the aggregate term of eight years. Having aggregated the terms, the defendant is entitled to a credit of 336 days as of November 15, 1984 against the aggregate eight year term, not the last term of imprisonment. This credit represents the time *415 defendant spent in prison between December 16, 1983 and November 15, 1984 on the prior sentence.
In reaching our decision today, we have studied carefully the recent decisions in State v. Hall, 206 N.J. Super. 547 (App.Div. 1985); State v. Hugley, 198 N.J. Super. 152 (App.Div. 1985) and State v. Jones, 184 N.J. Super. 626, 629 at n. 2 (Law Div. 1982). While none of those decisions allowed a credit, we reject any suggested interpretation which is inconsistent with our holding.
The judgment of conviction is affirmed. The matter is remanded to the Law Division to enter an amended judgment allowing a credit of 336 days against the eight year aggregated term.
NOTES
[1] Judge Greenberg did not hear the oral arguments, but counsel have agreed to let him participate in the decision without the need for reargument. See R. 2:13-2 b.
[2] Although the issue was neither briefed nor argued in this case, we have serious doubt as to the continued viability of N.J.S.A. 2C:44-5 b(2) and N.J.S.A. 2C:44-5 e(2) since the Parole Act of 1979, N.J.S.A. 30:4-123.51 h and N.J.A.C. 10A:71-3.1 et seq. now control aggregation for purposes of parole. We have exercised judicial restraint and leave the issue for another day, but we highly recommend legislative consideration to make judicial aggregation consistent with aggregation by the Parole Board.

An illustration can best highlight the conflict. Joe Smith is sentenced on May 1, 1981 to a term of five years. On May 1, 1982 he is sentenced to a consecutive five year term for an offense committed on March 1, 1981. In the last judgment of conviction the trial judge aggregated the two terms as required by N.J.S.A. 2C:44-5 e(2) by adding the two five year terms to arrive at an aggregated term of 10 years. Pursuant to N.J.S.A. 2C:44-5 b(2) he allowed a credit of 365 days in remission of the 10 year aggregated term to determine "the permissible aggregate length of the term ... remaining to be served...." The judgment of conviction with the aggregated term is forwarded to the institution that will confine Smith and a copy goes to the Parole Board. The Parole Board must, pursuant to N.J.S.A. 30:4-123.51 h, aggregate the parole eligibility terms as part of the procedure for "determining the primary parole eligibility date...." The primary parole eligibility term is 20 months on each of the five year sentences. N.J.S.A. 30:4-123.51 a; N.J.A.C. 10A:71-3.2(c)2. The aggregated primary eligibility term is 40 months. N.J.A.C. 10A:71-3.2(d). Thus it is clear that the judicially aggregated term of 10 years with a credit of 365 days is more detrimental to Smith's penal interest than the 40 month aggregated term of the Parole Board. This is so even though both of the aggregated terms may be reduced by commutation credits. We are therefore doubtful whether § 5 b(2) and § 5 b, e(2) serve any useful purpose since the Parole Act of 1979 became effective on April 21, 1980.