Lloyd Eugene **SWINSON**, Petitioner,

v.

**UNITED STATES PAROLE COMMISSION**, Respondent.

**No. 87–1176–HC.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Feb. 18, 1988.

---

Lloyd Swinson, pro se.

## ORDER

DUPREE, District Judge.

Petitioner, a federal inmate housed at FCI–Butner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking to compel the respondent United States Parole Commission to set petitioner's release date consistent with the guidelines established by Congress as part of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, §§ 211–239, 1984 U.S. Code Cong. & Ad.News (98 Stat.) 1837, 1987–2040 (codified as amended at 18 U.S. C. § 3551, *et seq.*).[1] The action is before the court on petitioner's motion to proceed in forma pauperis. 28 U.S.C. § 1915(d). This motion will be allowed. However, upon review of the complaint, the court concludes that petitioner's allegations clearly show that he is not entitled to relief, and his petition will be dismissed.

On August 19, 1985, before the Honorable Robert D. Potter, Chief Judge of the United States District Court for the Western District of North Carolina, petitioner pled guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a) and three counts of bank larceny in violation of 18 U.S.C. § 2113(b). Petitioner received concurrent terms of imprisonment of twenty years on the robbery counts and concurrent terms of five years' imprisonment on the larceny counts to be served consecutively to the twenty-year term for an aggregate term of imprisonment of twenty-five years. On or about March 3, 1986, petitioner received from the Parole Commission a "notice of action" informing petitioner that he would continue service of his sentences until a presumptive parole date of November 10, 1993. After receiving this notice petitioner filed an "inmate request" form with his case manager disputing the Commission's decision. Petitioner filed the instant application for habeas corpus relief on December 1, 1987. On December 12, 1987, he filed a "request for administrative remedy" with the Bureau of Prisons, complaining that he *"was not* allowed to see the Parole Commission for an 'initial hearing' " and "the release date sent me by the Parole Commission is *far* in excess of my applicable offense severity guidelines *now* in effect." The Bureau denied Swinson's request and advised him to write the Parole Commission. On December 24, 1987, he wrote the Parole Commission's Southeast Regional Office "request[ing] to be placed on the February, 1988 docket for the setting of guidelines consistent with my offense severity...."

■ Proceedings in forma pauperis may be dismissed if the court is satisfied that the action is frivolous. 28 U.S.C. § 1915(d). For purposes of determining frivolity the court should consider whether the case is without arguable merit, both in law and in fact. *Boyce v. Alizaduh,* 595 F.2d 948, 951–52 (4th Cir.1979). In this instance peti-

---

1. The Sentencing Reform Act of 1984 constitutes Chapter II of the Comprehensive Crime Control Act of 1987, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1837. The

CCCA contains twenty-three chapters, each of which is separately referred to as an "act." *Romano v. Luther,* 816 F.2d 832, 834–35 (2d Cir. 1987).

tioner Swinson's motion to proceed in forma pauperis and application for habeas corpus relief will be dismissed for failure to exhaust all available administrative remedies and, alternatively, for failure to state a claim.

■ A federal prisoner ordinarily may not challenge a parole decision until he has exhausted all available administrative remedies. *United States ex rel. Caruso v. United States Board of Parole,* 570 F.2d 1150, 1152 (3d Cir.), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978). A Parole Commission decision adverse to an inmate must be appealed to the National Appeals Board before exhaustion is complete. *See* 28 C.F.R. § 2.26. Here, the record indicates that Swinson has written the Parole Commission in an apparent attempt to appeal its earlier "notice of action." To date the court is unaware of any action taken by the Parole Commission in response to petitioner's letter. Furthermore, petitioner has not appealed any decision of the Parole Commission to the National Appeals Board. Hence, petitioner clearly has not exhausted his available administrative remedies and his action will be dismissed on this basis.

Even assuming Swinson had exhausted his administrative remedies his petition for habeas corpus relief must be dismissed as frivolous. 28 U.S.C. § 1915(d). Petitioner argues that his release date should be set by the Parole Commission according to the sentencing guidelines established by the Sentencing Reform Act of 1984. He contends his rights to due process and equal protection of the laws are being violated because "the 'old law' prisoners ... are at a severe disadvantage as compared to the 'new law' prisoners" and that "the ends of justice are not served by such disparity...."

■ It is now clear that the sentencing guidelines, which went into effect on November 1, 1987, are to be applied prospectively. Congress recently amended the Sentencing Reform Act of 1984 to state that the guidelines shall apply only to offenses committed on or after November 1, 1987. Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 1988 U.S.Code Cong. & Ad.News (101 Stat.) 1266 (amending Pub.L. No. 98–473, § 235(a)(1), 98 Stat. 2031). A primary purpose of this amendment was to avoid possible violations of the ex post facto clause of Article I, Section 9, of the United States Constitution. The ex post facto clause prohibits laws that retroactively increase the requirements necessary to obtain parole. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). While parole release dates for some prisoners might arrive sooner under the new guidelines, countless others likely would serve longer terms of imprisonment if their sentences were to be recalculated pursuant to the latest guidelines. By applying the guidelines in a purely prospective fashion Congress has completely eliminated such a likelihood.

■ Still, petitioner complains that his rights to due process and equal protection are violated by the disparity in terms of actual incarceration that inevitably will arise between "old law" and "new law" prisoners, insisting that he would be released some forty-three to fifty-four months sooner if the Parole Commission were to apply the new guidelines to his sentence. Indeed, one of Congress' reasons for creating the new sentencing scheme was to reduce the disparity in sentencing that was prevalent in our society. 28 U.S.C. § 991(b)(1)(B). Under the former system judges exercised broad discretion to impose indeterminate sentences and the Parole Commission determined how much of the sentence would be served in prison. Under the system now in effect judges will impose determinate sentences pursuant to guidelines issued by the United States Sentencing Commission; the Parole Commission will be phased out by November 1, 1992; and parole will be abolished. Because November 1, 1987, was chosen as the dividing line between the two systems, some disparity inevitably will be present with respect to the sentences of criminals who otherwise would be similarly situated. However, with respect to petitioner, and all other "old law" prisoners, no constitutional rights are violated by the disparity.

"Legislative distinctions affecting the portions of sentences that must be served in prison satisfy equal protection standards when they are rationally related to legitimate state purposes. *McGinnis v. Royster*, 410 U.S. 263, 270 [93 S.Ct. 1055, 1059, 35 L.Ed.2d 282] ... (1973)...." *Romano v. Luther, supra* at 842. The evident purpose of sentencing reform was to equalize terms of incarceration for prisoners similarly situated. To effectuate that purpose the Sentencing Commission and its guidelines were instituted on November 1, 1987, and the Parole Commission began its five-year transitional phase out period. Clearly, Congress chose a rational means of achieving a legitimate purpose. Therefore, petitioner's right to equal protection of the laws has not been violated.

Neither have petitioner's rights to due process been violated. By act of Congress all laws in effect on October 31, 1987, pertaining to an individual who is released pursuant to his presumptive release date, "including laws pertaining to terms and conditions of release, revocation of release, provision of counsel ... [etc.], shall remain in effect as to the individual until the expiration of his sentence...." Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 235(b)(4)(B)(ii), 1984 U.S.Code Cong. & Ad.News (98 Stat.) 1837, 2032–33. In this instance the Parole Commission set petitioner's presumptive release date in excess of its guidelines because his minimum sentence exceeded the guideline range of fifty-two to eighty months. His release date was then set at one-third of his term of incarceration, or one hundred months. Thus, November 10, 1993 was the earliest date at which petitioner could be eligible for release on parole. 18 U.S.C. § 4205(a). The fact that petitioner was not present when the Parole Commission made its decision is of no consequence inasmuch as petitioner was furnished with a statement of the reasons supporting his presumptive release date. *See Franklin v. Shields*, 569 F.2d 784 (4th Cir.1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). Therefore, the court finds that none of petitioner's rights to due process have been violated.

Based on the foregoing, the court finds that petitioner has failed to exhaust his available administrative remedies and, alternatively, that he has failed to state a meritorious claim for habeas corpus relief pursuant to 28 U.S.C. § 2241. Accordingly, petitioner's motion to proceed in forma pauperis is allowed, but this action is dismissed as frivolous. 28 U.S.C. § 1915(d).

SO ORDERED.