**Francisco LORENZO, Petitioner,**

**v.**

**Robert EDMISTON, Superintendent of Southern State Correctional Facility; W. Cary Edwards, Jr., Attorney General of the State of New Jersey; and Louis Nickolopoulos, Chairman of the New Jersey State Parole Board, Respondents.**

Civ. A. No. 88–2615.

United States District Court,
D. New Jersey.

Jan. 25, 1989.

Alfred A. Slocum, Public Defender of New Jersey by Daniel V. Gautieri, Asst. Deputy Public Defender, East Orange, N.J., for petitioner.

W. Cary Edwards, Atty. Gen. of New Jersey by Stuart J. Lieberman, Deputy Atty. Gen., Trenton, N.J., for respondents.

### OPINION

DEBEVOISE, District Judge.

This is a habeas corpus action by petitioner Francis Lorenzo, pursuant to 28 U.S.

C. § 2254, seeking to compel the New Jersey State Parole Board to apply 39 days gap time[1] credit to reduce the portion of petitioner's term of imprisonment during which he was ineligible for parole.

## BACKGROUND

Petitioner pleaded guilty to second degree armed robbery and on January 24, 1986 was sentenced by the New Jersey Superior Court in Somerset County to ten years imprisonment with a five year parole disqualifier. Petitioner subsequently pleaded guilty in Middlesex County to a first degree armed robbery that had been committed on the same day as the Somerset County robbery. On March 3, 1986, petitioner was sentenced in Middlesex County to fourteen years imprisonment with a seven year parole disqualifier. The guilty pleas were made pursuant to an agreement with the State that the maximum sentence imposed for either offense would be fourteen years with a seven year parole disqualifier and that the sentences would run concurrently.

In Somerset County the court awarded petitioner 181 days jail credit for the period he was incarcerated prior to his January 24 sentencing, pursuant to N.J.R. 3:21–8. In Middlesex County the court denied any credits to petitioner. Upon appeal from the denial of credits, the Appellate Division ordered the court to award petitioner 220 days credit on his 14 year term, 181 days of which were jail credit for the time served prior to imposition of the Somerset County sentence and 39 days of which were gap time credit for the time served between the January 24 and March 3 sentencing dates. On remand, the court awarded 220 days credit on the sentence, without distinguishing between the 181 day jail credit and the 39 day gap time credit, and without noting

whether parole ineligibility term was to be reduced by either credit.

While the full 220 days credit was applied to petitioner's maximum 14 year sentence, the New Jersey State Parole Board reduced his seven year parole ineligible term only by the 181 day jail credit, and not by the 39 day gap time credit. Petitioner appealed the Parole Board's refusal to reduce his parole ineligible term by the 39 days gap time on several bases, including a claim that the action of the Parole Board violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. The Appellate Division of the New Jersey Superior Court affirmed the Parole Board in a per curiam decision on November 25, 1987. Petitioner sought certification from the New Jersey Supreme Court on the same grounds presented in his Appellate Division brief. On April 12, 1988, certification was denied.

In order to understand petitioner's contentions it is necessary to examine certain of New Jersey's statutory and regulatory provisions governing aggregation of sentences imposed at different times and governing the establishment of parole eligibility dates when two or more sentences are imposed. New Jersey's law in this area is marked by "anomalies and ambiguities" resulting in part from "the Legislature's selective inclusion and omission of provisions of [the Criminal Code's] conceptual source, the Model Penal Code," *Richardson v. Nickolopoulos*, 110 N.J. 241, 540 A.2d 1246 (1988) (*"Richardson II"*) and resulting in part from the fact that judicial aggregation of sentences on the regulation of parole eligibility dates is governed by different statutes. *State v. Richardson*, 208 N.J.Super. 399, 506 A.2d 43 (App.Div.1986), *certif. denied*, 105 N.J. 552, 523 A.2d 188 (1986) (*"Richardson I"*).

**1.** Gap time occurs when a prisoner who has been sentenced for one crime is subsequently sentenced for a second crime that was committed before the first sentence was imposed. The period of imprisonment served after the imposition of the first sentence and before the imposition of the second sentence is called gap time. Gap time is distinguishable from jail time,

which is the period of imprisonment served prior to conviction and sentencing. Most of the prisoners who serve jail time do so because they are indigent and cannot make bail. New Jersey awards credit for jail time under R. 3:21–8, while credit for gap time is awarded under N.J.S.A. 2C:44–5b(2).

The critical statute in this case is N.J.S.A. 2C:44–5b(2) which governs sentencing at different times for multiple offenses. One of the problems the statute addressed was that which arose upon the imposition of concurrent sentences on different dates. For example, if two 5 year concurrent sentences were imposed on June 1, 1980, the defendant would receive, in effect, a 5 year term. However, if the very same sentences were imposed on different dates—one on June 1, 1980 and one on June 1, 1982—the defendant would receive a 7 year term. As the Court noted in *Richardson I*, "[b]ecause the subsequent sentence was not imposed for two years after the former sentence, [defendant's] maximum sentence was extended by two years. The date of imposition of the subsequent sentence and the duration of that sentence determine whether the subsequent sentence was really concurrent as stated by the sentencing judge or whether it was concurrent in part and consecutive in part." 208 N.J.Super. at 410, 411, 506 A.2d 43.

Section 5b(2) addresses this situation by requiring that when a defendant who has been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the imposition of the former sentence the defendant shall be credited at the time of the second sentence for so much of the term of imprisonment as has been served on the prior sentence (the "gap time credit"). Thus in the example given above at the time of the June 1, 1982 sentence to a 5 year term, the defendant would be given credit for the 2 years already served on the June 1, 1980 sentence and his aggregate maximum term of imprisonment would be 5 years, exactly the same as if the two sentences had been imposed on the same date. The pertinent language of the statute is:

> When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:
>
> \* \* \* \* \* \*

> (2) Whether the court determines that the term shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served.

N.J.S.A. 2C:44–5b

The time which a defendant remains in prison, however, is not governed primarily by the aggregate length of the term of his imprisonment determined as provided in the Code of Criminal Justice, N.J.S.A. 2C:1–1 to 98–4. As a practical matter, a defendant's jail time will be governed by his parole eligibility date as determined by the Parole Board pursuant to the provisions of the Parole Act of 1979, N.J.S.A. 30:4–123.45 to 123.69. At the time of sentencing the judge can set a parole eligibility date, a minimum term of imprisonment before a defendant can be considered for parole. Aggregation of multiple sentences for the purpose of determining a parole eligibility date is a Parole Board function done pursuant to regulations adopted by the Board. N.J.S.A. 30:4–123.51h. The Parole Board does not credit gap time against a parole eligibility date.

Thus, we have one of those anomalies to which the New Jersey Supreme Court referred. Under Section 5b(2), gap time is applied to reduce the aggregate length of the term of imprisonment of a defendant given concurrent sentences on different dates. However, this is of little use to the defendant since the date of his release will be determined by his parole eligibility date. Under Parole Board regulations adopted pursuant to the Parole Act of 1979, gap time is not applied to reduce the parole eligibility date, and as a result, the actual amount of time a defendant sentenced to concurrent terms of imprisonment will actually serve will depend upon the totally *fortuitous circumstance of · the length of the interval between his sentencing dates.* As the Appellate Division stated in *Richardson I,* "we have serious doubt as to the continued viability of N.J.S.A. 2C:44–5b(2) and N.J.S.A. 2C:44–5e(2) since the Parole Act of 1979 ... now control[s] aggregation for purposes of parole.... we highly rec-

ommend legislative consideration to make judicial aggregation consistent with aggregation by the Parole Board." 208 N.J.Super., f.n. 2 at 411, 506 A.2d 43.

The New Jersey courts must interpret these statutory provisions. On April 13, 1988, in *Richardson II* the New Jersey Supreme Court held that the gap time credit afforded by Section 5b(2) reduced only the aggregate maximum sentence and did not reduce the parole ineligibility term. *Richardson II* involved two consecutive sentences, but in dictum the Court stated that Sec. 5b(2) would apply in the same way to concurrent sentences.

Thus as a practical matter, with respect to this aspect of sentencing the situation in New Jersey is very much the same as it was before the adoption of Sec. 5b(2). By virtue of adoption of the Parole Act of 1979, that Act and not Sec. 5b(2) determines the length of time a defendant will spend in jail. The regulations which the Parole Board adopted pursuant to that Act do not give credit for terms served between imposition of the first and the second of two concurrent sentences. Thus, once again the amount of time which a person sentenced to concurrent sentences will actually serve can be affected very substantially by totally irrelevant and fortuitous circumstances which dictate the dates when the two sentences will be imposed.

Petitioner urges that this situation deprives him of equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution. As stated in his brief:

> In the absence of the awarding of gap time credits and the application of such credits towards an inmate's parole eligibility date, persons who receive identical sentences wind up serving vastly different periods in custody solely as the result of their sentencing dates. Sentencing dates are often affected by the actions of prosecutors, who can prolong an inmate's incarceration by delaying the disposition on an indictment. In the instant case, petitioner has properly been accorded his gap time credits, but, due to the Parole Board's refusal to apply said credits to-

ward his parole eligibility date, he is suffering a prolonged incarceration due to the thirty-eight day lag between the imposition of the two concurrent sentences.

(Petitioner's Brief at 5, 6). I might add that there are many reasons why a second sentence might be delayed, perhaps for substantial periods of time, for example, administrative delays or the need to try another case first. There might be perfectly sound reasons, but they would have no bearing whatsoever on the amount of time the defendant should stay in jail.

Petitioner has exhausted his state remedies having raised his equal protection claims in the state courts and having been denied certification by the New Jersey Supreme Court. Thus, a federal court can consider the merits of petitioner's constitutional claims.

It is firmly established that mere discrepancy in the sentences imposed upon two similarly-situated individuals does not constitute a violation of equal protection. *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Palma*, 760 F.2d 475 (3d Cir. 1985); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir.1984). Petitioner's claim, however, is distinguishable from a claim that a similarly-situated inmate has received a less severe sentence. Petitioner is not arguing that his sentence was more severe than that of any other particular inmate, but rather that the system for awarding gap time credits arbitrarily distinguishes between prisoners sentenced on a single day and prisoners sentenced on multiple days.

The State argues that petitioner's equal protection claim fails because there is no class of similarly-situated defendants. The State asserts that a lapse of time between the imposition of the first and subsequent sentences for contemporaneous crimes may arise from as many reasons as there are defendants. The State notes that often the defendant rather than the State causes the delay, and, therefore, the question of whether the defendant should be compensated for the delay is a question of fact to be resolved at trial. If the State is at fault,

the court can reduce the sentence to compensate the defendant for the delay. This argument misses the point. Petitioner's argument is not that the State caused the delay, either inadvertently or in bad faith, but rather that his period of incarceration has been extended solely due to the timing of sentencing, and that it is the arbitrary distinction drawn by the sentencing scheme between defendants sentenced on a single day and those sentenced on more than one day which violates equal protection.

 Assuming for the moment that there is a class of prisoners whose parole ineligible terms are extended solely due to the timing of sentencing,[2] this unequal treatment violates equal protection only if the state has no rational basis for the disparate treatment. Where a state law that neither creates a suspect classification nor impinges upon fundamental rights is challenged on equal protection grounds, the "rational basis" test is applied.[3] *Kadrmas v. Dickinson Public Schools,* — U.S. ——, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988).

Under the rational basis standard, the legislation will be upheld if the classifications it creates are rationally related to legitimate governmental objectives. *Kadrmas,* 108 S.Ct. at 2487, 2489. The rational basis test gives great deference to legislative distinctions, which are presumed to be rational unless a clear showing of arbitrariness and irrationality is made. *Kadrmas,*

108 S.Ct. at 2489–90; *Hodel v. Indiana,* 452 U.S. 314, 331–332, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981); *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979). Similar deference is accorded state administrative policy, particularly in prison administration, an area in which the State has strong interests and wide discretion. *Rowe v. Fauver,* 533 F.Supp. 1239 (D.N.J.1982). State-created distinctions among prisoners generally withstand the rational basis test. *See, e.g., McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed. 2d 377 (1975); *Rowe v. Fauver,* 533 F.Supp. 1239 (D.N.J.1982).

Applying the rational basis standard in *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the United States Supreme Court upheld New York State's practice of denying good time credits for time spent in a county jail[4] while granting good time credits for time spent in the state prison. The *McGinnis* plaintiffs had been held in the county jail while awaiting sentencing because they were unable to post bail. The plaintiffs claimed that denying good time credit for county jail time violated the equal protection clause because prisoners who were wealthy enough to post bail served no time in the county jail, and, hence, could accumulate good time credit over their entire period of incarceration. The *McGinnis* court held it did not want to inhibit state experimental

**2.** The State argues that under the New Jersey sentencing scheme, prisoners who are sentenced on two different days are not treated differently from prisoners who receive multiple sentences on a single day. The equality of treatment is not assured by N.J.S.A. 2C:44–5b(2), which limits only the maximum length of the sentence; rather, New Jersey directs the sentencing judge to evaluate the real time consequences of sentencing, including the effect of any gap time on the length of the parole ineligibility term, and to adjust the sentences accordingly to craft a sentence that meets the needs of justice. *Richardson v. Nickolopoulos,* 110 N.J. 241, 255, 540 A.2d 1246 (1988).

**3.** Petitioner argues that the strict scrutiny test should be applied because a fundamental liberty interest is at stake, but the rational basis test consistently has been applied where the disparate treatment of a class of prisoners lengthens

their period of incarceration. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *United States v. Murillo–Guzman,* 845 F.2d 314 (11th Cir. 1988); *United States v. McClinton,* 815 F.2d 1242 (8th Cir.1987); *Swinson v. United States Parole Commission,* 682 F.Supp. 29 (E.D.N.C.1988).

**4.** Good time credit for presentence county jail time was credited towards reducing the statutory release date, i.e., the earliest date that the prisoner must be paroled by the New York Parole Board, but could not be credited when computing the minimum parole date, i.e., the earliest date that the prisoner could be paroled. This is analogous to the New Jersey scheme where gap time credits reduce the aggregate maximum term of imprisonment, but do not reduce the parole ineligible period.

classifications in the sensitive area of parole eligibility, and, therefore, such classifications required only a rational basis to sustain them. *Id.* at 269, 93 S.Ct. at 1059, 35 L.Ed.2d at 288, 289. The Court held that the absence of rehabilitative facilities in the county prison, while such facilities existed in state prison, provided a sufficient rational basis for the denial of good time credits.

Applying the rational basis test in *Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975), the Supreme Court upheld a Texas law which required dismissal of the appeals of felons who escaped during the pendency of their appeals. The Fifth Circuit had struck down the law, holding that it irrationally distinguished between similarly-situated classes of prisoners because: (1) the appeals of prisoners with life sentences could be reinstated under certain circumstances, while prisoners with parole ineligible terms as long as those of the prisoners with life sentences could not have their appeals reinstated; and (2) prisoners who had not filed their appeals before escaping could file appeals after recapture, while prisoners whose appeals were pending at the time of escape could not refile. The Supreme Court reversed the Fifth Circuit, finding a sufficient rational basis to support the distinctions. The *Estelle* Court held that Texas was free to distinguish between prisoners with more severe maximum penalties, even if their parole ineligible terms and likely terms of incarceration were the same, and that Texas was also free to deal more strictly with felons who concurrently used the appellate process and escaped from custody, as compared with escapees whose appeals were not pending. The Court justified the latter distinction on the grounds that the escape of the appellants could be viewed as reasonably calculated to disrupt the very appellate process that the prisoners had set in motion, thus providing a rational basis for disparate treatment.[5]

*Rowe v. Fauver*, 533 F.Supp. 1239 (D.N.J.1982), upheld New Jersey's denial of work credits to disabled inmates, while inmates who were not able to work because they were disabled on their prison job, or attending school, or under close confinement, were granted work credits. In *Rowe* I found that the State had articulated a "reasoned basis" for each of the distinctions. Inmates who were injured on a prison job had an equitable claim that justified the provisions of work credits as a type of worker's compensation. Work credits were awarded to inmates attending school in order to encourage educational pursuits, as part of a rehabilitative program. Prisoners under close confinement were granted credits for "cell sanitation" duty, which, while of limited utility, boosted morale in an area of the prison which posed special security risks. *Id.* at 1247–48.

Distinctions among prisoners created by Federal law have also satisfied the rational basis test under Fifth Amendment due process analysis. In *United States v. McClinton*, 815 F.2d 1242 (8th Cir.1987), the Court upheld under the rational basis test 18 U.S.C. Appendix II section 1202(a)(1), which mandated a minimum 15 year sentence without parole for firearm possession convictions if the defendant had been convicted of three prior felonies. In 1964, McClinton had pled guilty to three counts of breaking and entering which occurred in 1962. He had no felony convictions since that guilty plea. While McClinton was subjected to a minimum 15 year term under § 1202(a)(1), his codefendant, who was also convicted of firearm possession, received the statutory maximum sentence of two years, even though he had recent, more serious felony convictions. McClinton claimed that the mandatory minimum sentence was arbitrary because it did not apply to more serious offenses, nor did it provide a limit on the period of years for which a conviction may be considered, nor did it provide any fixed amount of property that had to be taken for a breaking and entering charge to be considered. *Id.* at 1244. While the Court found that McClin-

**5.** The *Estelle* court held that the State was free to focus on the "severity" of a sentence and not the collateral consequences of a sentence when balancing the need to deter escapes with an interest in allowing severe sentences to be tested by appellate review.

ton's argument was not without merit, and that an unjust result may have occurred in his case, it held that the enhanced penalty for three-time felons was a rational means to achieve the legitimate goal of deterring career criminals.

In the instant matter, the defendants have urged that the State of New Jersey has a rational basis for its interpretation of *N.J.S.A.* 2C:44–5b(2) and the application of its parole rules. In *Richardson II*, the New Jersey Supreme Court concluded that the legislature intended *N.J.S.A.* 2C:44–5b(2) to limit only the maximum aggregate sentence length, and not to reduce judicially-imposed parole ineligibility terms. The Court held that mechanical application of *N.J.S.A.* 2C:44–5b(2) to reduce the parole ineligible terms set by the sentencing court would reduce the court's sentencing flexibility, contrary to the overall scheme of the New Jersey Code of Criminal Justice. *Richardson II*, 110 N.J. at 251, 254, 540 A.2d 1246. If *N.J.S.A.* 2C:44–5g(2) automatically reduced parole ineligible terms, the gap time credit would eliminate the consecutive parole bar of consecutive sentences in some cases.[6] The *Richardson* defendant had argued that, under the State's interpretation of *N.J.S.A.* 2C:44–5b(2), judges might not be able to impose truly concurrent parole bars in some cases. The Court rejected this argument, because by reducing the parole ineligible term or imposing no parole ineligibility on the second term, a court could produce near-perfectly concurrent sentences. *Richardson* at 251–52, 540 A.2d 1246. The Court reasoned that the need to consider the real time effects of the sentence imposed served the "very important purpose of guaranteeing that courts will be mindful of the 'true meaning' that their sentences will impose (cites omitted)...." *Richardson* at 255, 540 A.2d 1246. *N.J.S.A.* 2C:44–5b(2) was enacted as part of a revision of the New Jersey Code of Criminal Justice, the goal of which was to ensure that sentencing would punish the criminal adequately and produce sentences for short and certain periods of time. *See Richardson* at 243, 540 A.2d 1246.

Not all of the justifications for the statutory scheme addressed in *Richardson II* are equally persuasive. For example, statutory minimum sentences may make it impossible for a judge imposing the second of two concurrent sentences to tailor his sentence so that the actual time served will be the same as it would have been had the sentences been imposed on the same date. Nevertheless, despite its "anomalies and ambiguities" New Jersey's sentencing system as it stands after *Richardson II* cannot be said to be so anomalous and so ambiguous as to deny defendants receiving concurrent sentences at different times equal protection of the law. The sentencing judges are directed to take into account the time a defendant will actually serve and, within statutory directives, to shape their sentences accordingly. One must expect that a judge imposing the second of two concurrent sentences will be aware of the limited effect of Sec. 5b(2) and of the manner in which parole eligibility will be computed under Parole Board regulations. One must further expect that he will impose the sentences which will result in the terms of imprisonment he thinks is appropriate. As of now defendants, prosecutors and the courts are aware of the peculiarities of New Jersey's sentencing rules governing concurrent sentences, and they are in a position to make decisions in the light of these rules.

Thus, I conclude that the sentencing system resulting from the New Jersey Supreme Court's interpretation of Sec. 5b(2) in *Richardson II* does not violate a defendant's equal protection rights. This is the issue which petitioner raised in the state courts and in this court. Since the issue is decided adversely to petitioner his petition will be dismissed. The questions are of

---

6. For example, if *N.J.S.A.* 2C:44–5b(2) were construed as petitioner urges it would eliminate the second parole bar in a situation where two consecutive three-year sentences with an 18 month parole disqualifier on each sentence were imposed, and the second sentence was imposed 18 months after the first sentence. Accordingly, the prisoner would be eligible for parole release after serving only 18 months, creating, in essence, a "free crime."

sufficient interest and difficulty that I will issue a certificate of probable cause.[7]

I shall enter an appropriate form of order.

**7.** A question which was not presented in federal constitutional terms in the State Court proceedings and which therefore cannot yet be raised in this Court is whether under the circumstances the State of New Jersey violated petitioner's due process rights by failing to adhere to its plea agreement with him. The guilty pleas were made pursuant to an agreement with the State that the maximum sentences for each offense would be fourteen years, with a seven years parole disqualifier and that the sentences would be concurrent.

The New Jersey Supreme Court has only recently established the intent and effect of Sec. 5b(2) and the pertinent provision of the Parole Act of 1979 on concurrent sentences imposed at different times. This was done long after petitioner entered into his plea agreements. Petitioner states that "in a 1985 memorandum circulated to trial judges by the Administrative Office of the Courts, judges were advised that they should apply gap time credits towards defendants' sentences and that such credits *would* apply towards parole release dates." (Petitioner's Brief at 24). If this interpretation of the law was a part of the plea agreement, it might well be that failure to apply it in this case would implicate constitutional rights. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).