213 N.J. Super. 331 (1986)
517 A.2d 460
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHRIS G. ALEVRAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 10, 1986.
Decided October 20, 1986.
*332 Before Judges FURMAN and STERN.
Chris G. Alevras, appellant, pro se.
W. Cary Edwards, Attorney General, attorney for respondent (Kenneth M. Denti, Deputy Attorney General, of counsel and on the letter-brief).
The opinion of the court was delivered by STERN, J.A.D.
*333 Pursuant to a negotiated disposition, defendant pled guilty to counts 1, 2, 3 and 4 of indictment 347-3-84, counts 1, 10, 13, 15, 17, 19 and 21 of indictment 348-3-84, counts 1, 4 and 5 of indictment 351-3-84 and to Accusation 241-9-84. The remaining counts of indictment 348-3-84 and all of indictments 344-3-84, 345-3-84, and XXXX-X-XX were dismissed as to defendant.
The negotiated disposition was explained as follows in a colloquy between the prosecutor and the court at the time of plea:
MR. WEST: ... There are seven indictments  correction, six indictments plus the accusation against Mr. Alevras. And as I understand the plea bargain, Mr. Alevras is prepared at this time to enter pleas of guilty to Counts 1, 10, 13, 15, 17, 19, and 21 of Indictment 348-3-84; also Counts 1, 2, 3, and 4, which is the entire indictment of 347-3-84; Counts 1, 4, and 5 of Indictment 351-3-84; and Accusation 241-9-84.
In exchange for those pleas of guilty, the State will move to dismiss the remaining counts of Indictment 348-3-84, Indictment 1002-84 in its entirety, Indictment 344-3-84 as it relates to this defendant, Indictment 345-3-84, in its entirety including the indictment against the codefendant.
THE COURT: Which codefendant?
MR. WEST: Mr. Alevras' wife. And the State will recommend the following: A total sentence of max 12 years with a minimum parole period of ineligibility of four years. That sentence is to run concurrent with the present sentence he is serving which, for the Court's knowledge, is a five year State prison sentence with a two-and-a-half year parole ineligibility sentence.
THE COURT: That's a Middlesex County sentence?
MR. WEST: That's correct. He began serving that approximately a month ago, if I'm not mistaken.
THE COURT: Okay.
MR. WEST: In addition, the State will recommend that the sentence imposed is to run concurrent with any other sentence he receives. For instance, he has some outstanding charges from New York. He has a possible parole violation out of the State of New York. We're recommending that the sentence in New Jersey run concurrently but not limited to the sentences he may get outside this jurisdiction. All right?
And, finally, two other problems.
THE COURT: Wait a minute. Say that again. You want whatever the Court here imposes on these charges to run concurrent with a parole violation in New York, which has not been yet imposed?
MR. WEST: Our sentence will not be consecutive. Obviously, it can't be if it hasn't been done yet, but we're making a promise 

*334 THE COURT: All right.
MR. WEST: That we're not going to ask for an extended term, which he might be eligible for.
Finally, we reserve the right to be heard at sentence.
There's one other promise that was made or an inducement to Mr. Alevras, and that is we're saying to him that he preserves the right to appeal a denial of a motion to dismiss the indictments and complaint which was heard before Judge Kuhlthau on December 3, 1984. He preserves the right to appeal that.
At the plea hearing the defendant acknowledged his maximum exposure to all offenses and to the offenses for which he pled guilty, indicated his knowledge that pursuant the agreement he was exposed to 12 years with a minimum parole ineligibility period of four years and indicated a factual basis for each offense to which a guilty plea was entered. Indictment 347-3-84 alleged violations of N.J.S.A. 2C:21-5 (issuing a bad check) in counts one and three and violations of N.J.S.A. 2C:20-4 (theft by deception) in counts two and four. At the plea hearing the defendant gave the following factual basis with respect to those counts:
MR. WEST: ...
Okay, Indictment 347 has four counts. The first count indicates that between  strike that  on or about October 8, 1983, in the Township of Millburn, County of Essex, you issued a check dated October 5, 1983, drawn on an account of a John Libretto, at the Bank of the South located in Forest Park, Georgia, in the amount of $15,000, and when you gave the merchants, and when you gave the individuals that check, you knew it was a bad check. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: Specifically, on or about that date you gave a $9,500 check payable to you and John Libretto to a Patricia Fine. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: Specifically, you gave to a person who worked for a jewelry store known as Kroupa Jewelers a check in the amount of $15,000, and you knew the check was bad. Isn't that correct?
THE DEFENDANT: Yes.
MR. WEST: And the second count says on or about the 14th day of October, 1983, also at Kroupa Jewelers in the Township of Millburn, this is at the Short Hills Mall  correct?
THE DEFENDANT: Yes.
MR. WEST:  you obtained from Kroupa Jewelers property in excess of $500 with the use of that bad check. Is that correct?
THE DEFENDANT: Yes.

*335 MR. WEST: And in effect, you got approximately $13,000 in jewelry and $2,000 in change. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: Count three indicates that on or about October 17, 1983, in Edison, you uttered to an individual check number 101 dated September 30, 1983, drawn on the account of John Libretto at the Bank of the South in the amount of $9,500 knowing that the Bank of the South would not honor the check. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: When you gave the check to Mrs. Fire, you knew the Bank of the South wouldn't honor the check. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: And the last count of this indictment says by use of that check you obtained from Patricia and Robert Fire property in the amount of $500. Is that correct?
THE DEFENDANT: Yes.
MR. WEST: And, in fact, you obtained exactly $9,000. Is that correct?
THE DEFENDANT: Yes.
In direct response to a question from the court the defendant again acknowledged that he understood that he could be sentenced up to 12 years in custody and that he could be required "to serve at least four years before being eligible for parole."
The court sentenced defendant on indictment 347-3-84 to the custody of the Commissioner of Corrections for three years on each of the four counts, each term "to run consecutive to each other" for an aggregate of twelve years, and the court further ordered that the defendant "serve a minimum period of four years before he may become eligible for parole." The sentences on the four counts were made concurrent with the sentence defendant was then serving on another indictment for which he had been convicted and sentenced the month before (indictment 346-3-84). Further, the sentences on the four counts of indictment 347-3-84 were also made concurrent with concurrent three year custodial sentences simultaneously imposed on indictments 348-3-84 and 351-3-84 and on accusation 241-9-84. All the sentences imposed were also made concurrent "with violation of parole, if any." Hence, the court imposed *336 an aggregate sentence of 12 years in custody with four years to be served before parole eligibility.
Defendant appeals and argues:
POINT I WHERE FROM THE PLEA BARGAIN TERMS AND TOTALITY OF THE CIRCUMSTANCES DEFENDANT'S SUBJECTIVE UNDERSTANDING IS THAT THE MAXIMUM PAROLE INELIGIBILITY TERM WOULD BE FOUR YEARS, THE VALIDITY AND REASONABLENESS OF WHICH IS ACKNOWLEDGED AND CONFIRMED BY DEFENSE COUNSEL AND THE PROSECUTOR, IT IS CONSTITUTIONAL ERROR FOR THE COURT TO IMPOSE A PAROLE DISQUALIFIER EFFECTIVELY EXCEEDING FOUR YEARS. V, VI, XIV USCA. (This issue was raised in the court below)
POINT II WHERE AS PART OF A PLEA BARGAIN THE PROSECUTOR PROMISES TO RECOMMEND SPECIFIC SENTENCING PARAMETERS WHICH ARE ILLEGAL AND STATUTORILY PROHIBITED SUCH PROMISE IS DEEMED UNFULFILLABLE THEREBY RENDERING THE GUILTY PLEA FATALLY FLAWED AND CONSTITUTIONALLY INFIRM. V, VI, XIV USCA. (This issue was raised in the court below)
POINT III WHERE FACTUAL INTERDEPENDENCE OF INDICTMENT COUNTS IS SUCH THAT PROOF OF GUILT IN ONE IS CONDITION PRECEDENT TO PROVING GUILT IN OTHER, AND ALL COUNTS ARE DERIVED FROM AND CONTAINED WITHIN SINGLE CRIMINAL EPISODE, MERGER PRECLUDES CONSECUTIVE SENTENCING. V, XIV USCA. (This issue was not raised in the court below)
POINT IV WHERE DEFENDANT, A CORE CONSPIRATOR, HAS PREVIOUSLY BEEN CONVICTED OF CONSPIRACY, DOUBLE JEOPARDY PROHIBITS SUBSEQUENT PROSECUTION FOR OFFENSES COMMITTED IN FURTHERANCE OF THE SINGLE CONSPIRACY OR COMMON PLAN. ALTERNATELY, THE HEARING IN THE COURT BELOW FAILED TO COMPLY WITH DUE PROCESS REQUIRING THE ISSUE BE REMANDED FOR REHEARING AND REDETERMINATION.
At the time of plea defendant preserved his right to challenge the denial of his motion to dismiss. See R. 3:9-3(f). Given the pendency of the charges against him in Middlesex County, it would have been prudent for the prosecutor to have avoided the issue regarding statutory bars to prosecution for the offenses not moved simultaneously with indictment 346-3-84 by making an application under N.J.S.A. 2C:1-8c for separate trials. See also R. 3:15.
*337 We need not decide whether all the offenses could have been joined in a single indictment against defendant charging conspiracy or otherwise, see N.J.S.A. 2C:5-2b and c; R. 3:7-6, because our review of the indictments indicates that each related to different times, places and events and that mandatory joinder was not required under N.J.S.A. 2C:1-8b. Cf. State v. Gregory, 66 N.J. 510 (1975), where the Supreme Court concluded that a defendant could not, after trial for sale of a controlled dangerous substance, be tried for possession of that substance with intent to distribute on the day of the sale. See also State v. Muscia, 206 N.J. Super. 551 (App.Div. 1985); N.J.S.A. 2C:1-10a(2), (3); R. 3:15-1(b); R. 3:15-2(b).[1] Indictment 346-3-84, which had been disposed of by trial before the plea, related to a conspiracy with Daniel Petito, referred to in the indictment as "John Doe A/K/A Anthony S. Russo." That conspiracy involved the use of forged checks stolen from Jenson and Mitchell, Inc. and events between May 21 and June 2, 1983. While indictment 344-3-84 included "John Doe A/K/A Anthony S. Russo" as a co-conspirator and while evidence at the trial of indictment 346-3-84 introduced through Daniel Petito referred to the role of Michale Bove, a co-defendant on some of the other indictments, all of the indictments disposed of by the plea and related dismissals involved events occurring after those alleged in indictment 346-3-84, involved different *338 checks and accounts and involved different victims at different locations. The issue involved on this appeal is not whether mandatory joinder was required had any of the offenses disposed of by the plea been moved first. The question is only whether any of the offenses disposed by the plea had to be joined for purposes of trial with indictment 346-3-84.
Here, we find that neither the provisions of N.J.S.A. 2C:1-8b nor the doctrines of double jeopardy, mandatory joinder or fundamental fairness requires dismissal of the charges which were the subject of the plea proceedings. See e.g. Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); State v. Barnes, 84 N.J. 362, 370-371 (1980); State v. Gregory, supra; State v. Muscia, supra; State v. Godfrey, 139 N.J. Super. 135, 140-141 (App. Div. 1976), certif. den. 73 N.J. 40 (1976).
Defendant argues that the sentence imposed exceeds his reasonable expectations and that his plea was not knowingly, intelligently and voluntarily entered because of his expectation with respect to credits. He contends that the denial of credits for time spent in custody before sentencing on the offenses which are the subject of this appeal, but after sentencing on indictment 346-3-84, in effect increased the ineligibility term imposed by the number of days equivalent to the credits he expected.
We acknowledge that, at least in certain circumstances, a defendant's misunderstanding of credits may affect his understanding of the maximum exposure. Hence, a guilty plea based on this misunderstanding may fail to satisfy the constitutional requirement that a plea be voluntarily, intelligently and knowingly entered, at least where the denial of the expected credits results in the imposition of a sentence longer in duration than the maximum contemplated. Cf. State v. Kovack, 91 N.J. 476 (1982); State v. Jones, 184 N.J. Super. 626 (Law Div. 1982). This would be particularly true if a misunderstanding not *339 clarified during the plea colloquy had an impact on his decision to enter the guilty plea. See Hill v. Lockhart, 474 U.S. ___, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
We decline to decide the question of credits to which defendant was entitled under R. 3:21-8 and N.J.S.A. 2C:44-5b(2) because the issue was not developed before the sentencing judge. In fact, the sentencing judge expressly reserved consideration of the subject and indicated that upon a proper showing with respect to the time spent in custody he would "be more than willing without any time limitation to make the appropriate modification." The judge also indicated that if defendant "can convince us I'll be more than willing to amend whatever sentence is imposed today to include that time period." We therefore conclude, particularly in light of our remand for resentencing for reasons to be considered infra, that all factual and legal issues concerning credits should be considered upon presentation to the sentencing judge and that he should give a statement of reasons, including findings of fact and conclusions of law, with respect to the subject of credits and its impact on the sentence and the voluntariness of the plea, if defendant renews his motion to withdraw the guilty pleas.[2]
We note that the issue of merger was not raised at the time of sentencing on indictment 347-3-84. Generally, when a defendant simultaneously enters a guilty plea to more than one offense, the issue of merger is waived unless, in response to a question by the court or otherwise, the issue of merger is preserved. See N.J.S.A. 2C:1-8. As stated in State v. Truglia, 97 N.J. 513, 523-524 (1984):
We conclude that a holding of non-waiver of a claim of merger following guilty pleas is more consistent with our notions of fairness, limited however to the situation in which there has been no consideration given at the plea or sentencing hearing to the potential for merger of any of the offenses. As we *340 have said, when, as in this case, the question of merger is first raised on appeal, not having been averted to below or subject to a specific waiver, defendant must establish the merger. There may, for example, be instances in which merger fairly leaps off the pages of the record, despite which it escaped the attention of everyone below. Under those circumstances a defendant should have little difficulty in bearing the burden that today's opinion casts upon him.
Defendant acknowledges that the issue of merger was not raised below and that we must consider the subject under the test embodied in Truglia. The State, however, contends that there is no merger under the standard embodied in the Code of Criminal Justice, N.J.S.A. 2C:1-8a and d, and that the Code standard is that enunciated in the United States Supreme Court opinion of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the Blockburger test when the same conduct violates two provisions of the criminal law, defendant can be convicted and sentenced for both if each requires proof of a fact which the other does not. The factual basis for the pleas and the elements of each offense indicate that there may well be no merger under the Blockburger test even though the obtaining of property in exchange for a bad check constituted a single transaction. See State v. Fraction, 206 N.J. Super. 532, 536-540 (App.Div. 1985).
However, our Supreme Court has declined to hold that the Blockburger test controls the subject of merger in New Jersey. In State v. Truglia, supra, 97 N.J. at 520, the court expressly declined to "probe the nuances of whatever differences there may be between the Blockburger, Code, and [State v. Davis, 68 N.J. 69 (1975)] tests for merger" because in Truglia the result would have been the same under any test. However, the court did indicate that the Blockburger test "may suffer from a certain sterility," 97 N.J. at 521, and that the court has found it "more comfortable in recent years to eschew the `mechanical application of formulas' to resolve merger questions, [State v. *341 Mirault, 92 N.J. 492 (1982)] at 501, and to resort to the flexible approach of Davis." 97 N.J. at 521.[3]
While counts 1 and 2 and counts 3 and 4 of indictment 347-3-84 allege different dates for the issuance of the checks and the resulting thefts, a review of the factual basis at the time of plea, the presentence report and the transcript of proceedings at sentence leaves no doubt that the property referred to in counts 2 and 4 of the indictment was obtained as a result of the issuance of the checks referred to in counts 1 and 3 respectively. In fact, the sentencing judge so indicated when he stated:
Just for example, I'm just going to take, under the caption `summary of offense,' on just one of the indictments, I think it's Indictment 347, and this typifies the kind of person we are dealing with here. It says, `The Prosecutor's records indicate that a John Lebreto (phonetics) opened an account at the Bank of the South in Forrest Park, Georgia. Lebreto made out checks and gave them to this Defendant, the Defendant knowing that these checks would not be honored at the Bank of the South, successfully cashed the checks for $15,000 and another one for $9,500 in the following manner, takes one check, the $15,000 one and buys $12,000 worth of jewelry with it in Milburn, New Jersey,' and according to the Presentence Report, `receives the cash change.' That's a fairly good return for a check that won't be honored.
`Then he takes the $9,500 check and uses it as a down payment to buy a Jaguar from Robert and Patricia Fryer (phonetics), then decides not to buy it and he receives from these people $9,000 and tells them to keep the $500 for their trouble.'
He ends up with $12,000 worth of jewelry, $3,000 plus $9,000 more, that's $12,000 in cash and that's only one incident. I think that's fairly sophisticated, and I think you've injured alot of innocent people, Mr. Alevras, and I might say, sir, that you've got as much justice and you've got as much mercy, I think, than any Court in this nation can give you, and you have alot more problems in New York, and I don't know how many other states.
*342 Accordingly, we conclude that counts 1 and 2 and counts 3 and 4 must merge.
A new sentence, subject to the aggregate maximum originally imposed may be imposed on resentencing, provided that one can be so constructed consistent with the negotiated plea. The determination of merger, however, does not mean that the aggregate sentence must be affected. See State v. Truglia, supra, 97 N.J. at 524-525; State v. Rodriguez, 97 N.J. 263 (1984).
Because we remand for resentencing, we do not have to address the legality of the sentences originally imposed. However, we do note that the court on indictment 347-3-84 imposed consecutive sentences at the bottom of the range for third degree crimes and simultaneously imposed ineligibility terms on each count. While some deference must be paid to the negotiated disposition, see State v. Sainz, 210 N.J. Super. 17 (App. Div. 1986); State v. Guzman, 199 N.J. Super. 346, 351-353 (Law Div. 1985), here the imposition of a sentence at the bottom of the range required factfinding inconsistent with that necessary for the imposition of a period of parole ineligibility. See N.J.S.A. 2C:43-6b; 2C:44-1f(1). But see State v. Martelli, 201 N.J. Super. 378, 383 (App.Div. 1985); State v. Guzman, supra, 199 N.J. Super. at 351-353. Moreover, the court imposed an aggregate parole ineligibility term on all four counts of indictment 347-3-84, as opposed to an ineligibility term on each count or specific term sentence imposed, as required by N.J.S.A. 2C:43-6b. See also State v. Yarbough, 100 N.J. 627 (1985), cert. den. ___ U.S. ___, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986) concerning consecutive sentences.
It appears that the prosecutor and court below honored the negotiated recommendation concerning the New York parole violation. The prosecutor made certain communications to New York authorities and the court made its sentence concurrent to any parole violation. The New Jersey sentence was made concurrent with any New York parole violation irrespective of *343 what impact that may have in New York, and the New York courts cannot amend the New Jersey sentence. However, it appears that, as of the time defendant filed his brief on this appeal, the New York parole proceedings had not been completed. We have not been informed that the "parole sticker" or detainer against defendant has been withdrawn or that the parole violation charges have been dismissed by virtue of the New Jersey sentence. But see Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In any event, given the need for resentencing on indictment 347-3-84, and the possible application and impact of State v. Truglia and State v. Rodriguez on the sentences imposed with respect to the other indictments which were the subject of simultaneous sentencing, as well, the updated facts concerning the New York parole violation and its possible impact on this case should be considered at the proceedings on remand.
Accordingly, the judgments under review are affirmed except that counts 1 and 3 and counts 2 and 4 of indictment 347-3-84 are merged and the matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The allegations in the various indictments and charges on different dates in close proximity must involve the same "conduct" (see the definition of "conduct" in N.J.S.A. 2C:1-14d) or "episode" to require joinder under N.J.S.A. 2C:1-8b and R. 3:15-1(b) or the same "transaction" to require joinder under the Rule. We do not have to decide whether the offenses could have been joined in a single indictment, see R. 3:7-6, or whether the separate indictments could have been tried together by virtue of the ability to have joined them in a single proceeding. See R. 3:15-1(a). N.J.S.A. 2C:1-10a bars subsequent prosecutions only where there was required joinder under N.J.S.A. 2C:1-8 and in cases involving "conduct" where different proofs are not required. We read N.J.S.A. 2C:1-10a(1) to bar only subsequent prosecutions for offenses for which defendant could have been convicted based on the charges for which he was actually tried or which were actually the subject of disposition. See II Commentary, Final Report of Criminal Law Revision Commission, 30-31 (1971). In light of our disposition we do not have to consider the impact of the charges relating to offenses committed outside of Middlesex County, given the "venue" requirement embodied in N.J.S.A. 2C:1-8b. But see State v. James, 194 N.J. Super. 362 (App.Div. 1984).
[2] We recognize that, at present, there may be some dispute as to the proper interpretation of N.J.S.A. 2C:44-5b(2). See State v. Richardson, 208 N.J. Super. 399 (App.Div. 1986).
[3] The Code may not control because of the constitutional aspects of "merger." In the absence of legislative intent to the contrary with respect to multiple punishment stemming from the same prosecution, the Blockburger test governs "merger" for purposes of the federal constitution. See e.g., Garrett v. United States, supra. However, while the New Jersey Constitution has been interpreted to include jeopardy principles which accord with the federal constitution, see e.g., State v. Barnes, supra, 420 A.2d at 370, our Supreme Court has not interpreted our constitution to be coextensive with Blockburger because other constitutional values may be involved.