290 N.J. Super. 56 (1996)
674 A.2d 1016
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY MASTAPETER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1996.
Reargued April 15, 1996.
Decided May 2, 1996.
*58 Before Judges STERN, WALLACE and NEWMAN.[1]
M. Virginia Barta, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Ms. Barta, of counsel and on the brief).
Steven J. Kaflowitz, Special Deputy Attorney General, Assistant Union County Prosecutor, argued the cause for respondent (Edward F. Neafsey, Assistant Attorney General, Acting Union County Prosecutor, attorney).
The opinion of the court was delivered by STERN, J.A.D.
The principal issue raised on this appeal is whether defendant is entitled to "jail time" credit, pursuant to R. 3:21-8, for the time he was required to participate in an electronic monitoring wristlet program as a condition of his pretrial release. We hold that he is not, reject his other challenges to the sentence, and affirm his sentence without the award of such credits.
Defendant was indicted for murder, N.J.S.A. 2C:11-3a (count one), aggravated manslaughter, N.J.S.A. 2C:11-4a (count two), and possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4a (count three). Pursuant to a negotiated disposition, he pled guilty to reckless manslaughter (as a downgraded offense on count *59 two) in exchange for a recommendation of a five year sentence with a three year parole disqualifier. He received that sentence together with a $1,000 VCCB penalty. Counts one and three were dismissed as part of the negotiated disposition.
At the time of plea defendant testified that the victim, Michael LaFerrara, came to his home on a Sunday morning, that he was scared of the victim and that he told LaFerrara to leave. According to defendant
I told him to get away from my home. Leave my family alone. And I thought he was going for a gun with a swinging motion, and I acted too quickly and I fired a couple of shots.
Defendant acknowledged he did not see a gun or weapon in the possession of the victim, but went to get a handgun when he heard "loud banging at the door," became "scared," "was in fear," and "thought it was a person that was after " someone in his family.
At sentencing defense counsel asked for a downgrade of the second degree charge to third degree for sentencing under N.J.S.A. 2C:44-1f(2) and for imposition of a three year term with the mandatory three year parole ineligibility term. He acknowledged a Graves Act sentence was required. The prosecutor asked that the negotiated plea of five years with three years of ineligibility be imposed.
The judge, in a detailed exposition, expressed why he accepted the negotiated plea. In essence, the judge noted that the offense occurred at the defendant's home; that two independent witnesses indicated they heard threats made by the victim; that while he would reject imperfect self-defense because of where the shooting occurred (at the curb side near the car), it was an issue in the case; that while the victim's family believed the victim was shot in the back, he was shot in the side, and that only one bullet went into the victim's body supporting defendant's position of a reckless accident. In essence, the judge concluded
the State could get at best an aggravated manslaughter and considering the nature of the offense and the defendant's past and I knew all about this, the State was going to end up with ten with a three and a third under the law.
The judge also noted that, independent of whether the victim was a loan shark, the reality was that the weapons offense would merge; that the State would end up at best with an aggravated *60 manslaughter conviction, and that the mitigating factors (this being defendant's first conviction for any offense) outweighed the aggravating. The judge emphasized that the three years of parole ineligibility were the equivalent of about a fifteen year State prison sentence and that the negotiated sentence with a three year parole ineligibility term was only six months less real time to be served than the three and-a-third year parole bar which would follow an aggravated manslaughter conviction.
When the appeal was argued on the Oral Argument Sentencing calendar, defendant indicated a desire to brief certain issues. We granted such leave and defendant's subsequent request for further oral argument which was conducted telephonically on April 15, 1996. In the brief defendant argues:
POINT I DEFENDANT SHOULD RECEIVE CREDIT FOR THE TIME HE WAS ORDERED TO SPEND ON THE ELECTRONIC MONITORING PROGRAM AS A CONDITION OF BAIL. (Not Raised Below)
POINT II DEFENDANT SHOULD HAVE BEEN GRANTED AN EXEMPTION FROM THE GRAVES ACT PERIOD OF PAROLE INELIGIBILITY IN THE INTERESTS OF JUSTICE. (Partially Raised Below)
The judge gave detailed reasons for accepting the negotiated disposition and we find no basis for disturbing the sentence imposed in conformity therewith. See State v. S.C., 289 N.J. Super. 61, 70-71, 672 A.2d 1264 (App.Div. 1996).
Defendant was arrested for attempted murder on January 3, 1993, before the victim died, and was released on bail on January 6, 1993. Bail was continued on January 13, 1993, after the victim died and defendant was charged for the homicide. He seeks 765 days of jail time credits under R. 3:21-8 because he was placed in the "electronic monitoring program" as a condition of his pretrial release. Defendant contends that he was required "to wear [an] electronic monitoring wristlet and to be confined to his home as directed from 8:00 p.m. to 7:00 a.m. The wristlet subjected him to verification phone calls at random times throughout the night." The "special conditions" of his release also required defendant to "report to" a probation officer "each Monday" and call her twice a week.
*61 Defendant further argues that he "was offered bail only with the extremely onerous condition of the wristlet, with no advice or understanding that his time on the program would not be credited towards sentencing." He now contends that he "expect[ed]" these credits against his sentence. If defendant, in fact, anticipated that he would receive the credits against any sentence for the time he was "restrained" by the requirement that he wear the wristlet and be subject to a monitoring during the hours of curfew, he might well have a right to withdraw his plea (subject to resurrection of charges recommended for dismissal) because that expectation was not fulfilled. See State v. Alevras, 213 N.J. Super. 331, 517 A.2d 460 (App.Div. 1986), where we said:
We acknowledge that, at least in certain circumstances, a defendant's misunderstanding of credits may affect his understanding of the maximum exposure. Hence, a guilty plea based on this misunderstanding may fail to satisfy the constitutional requirement that a plea be voluntarily, intelligently and knowingly entered, at least where the denial of the expected credits results in the imposition of a sentence longer in duration than the maximum contemplated. Cf. State v. Kovack, 91 N.J. 476, 453 A.2d 521 (1982); State v. Jones, 184 N.J. Super. 626, 446 A.2d 1263 (Law Div. 1982). This would be particularly true if a misunderstanding not clarified during the plea colloquy had an impact on his decision to enter the guilty plea. See Hill v. Lockhart, 474 U.S. [52] 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
[213 N.J. Super. at 338-39, 517 A.2d 460.]
Here, however, at the time of plea defendant was expressly asked by the judge "[d]o you also understand while we're on the subject of credits, that you cannot and will not receive jail credits for the time you've spent on the wristlet program?" to which defendant answered "[y]es, Your Honor."
Notwithstanding that colloquy, defendant now contends, for the first time on appeal, both that his expectation was to the contrary and that he is, in any event, entitled to the credits pursuant to R. 3:21-8. That rule provides:
The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence.
*62 Defendant received credit for the four days he spent in custody before he was released on bail. In advance of sentencing, the Senior Probation Officer to whom he reported advised the judge:
In all of this officer's dealings with the defendant, he has been respectful and, to the best of my knowledge, honest. As of the time of sentencing Mr. Mastapeter will have been on the Pretrial Release Electronic Monitoring Program for two (2) years and one (1) month. This is the longest period of time a defendant has been on the program since its inception in Union County in 1987. While Mr. Mastapeter is not entitled to actual jail credit for this time, it is hoped that his successful participation is taken into consideration at the time of sentencing.
While the officer's positive report was referred to by defense counsel at the sentencing, the assertion with regard to jail credits was not challenged nor questioned. The officer also reported:
Mr. Mastapeter was originally placed on a 8:00 P.M. curfew. This enabled him to work and to attend to his family responsibilities. Due to his high level of cooperation, his curfew was extended to 9:00 P.M. on April 19, 1993. It remained at 9 P.M. until June, 1994, when it was extended to 11:00 P.M. Prior to June of 1994, Mr. Mastapeter was occasionally granted curfew extension for various reasons, such as, attending a friend's wedding and attending evening church services during Holy Week. The defendant always asked permission for such extensions well in advance, and he provided the necessary verification for such events.
We reject his contention that the requirements of his pretrial release were the equivalent of "custody in jail or in a state hospital" and that he is entitled to credits under R. 3:21-8.
Defendant contends that he was denied equal protection and due process because he did not receive the credits for the time he was on the wristlet program. However, his contention is based upon his treatment as compared to those who have received post-sentencing credits for similar conditions. See State v. Jiminez, 229 N.J. Super. 256, 258-59, 551 A.2d 191 (App.Div. 1988) (electronic wristlet surveillance used as part of intensive supervision program; leaving ISP program constitutes escape), rev'd on other grounds, 118 N.J. 252, 571 A.2d 295 (1990) (failure to follow rules of ISP and departure from New Jersey does not constitute escape). See also Moreland v. United States, 968 F.2d 655, 660 (8th Cir. en banc 1992) ("presentence defendants and post sentence defendants are legally distinct from one another and, therefore, *63 are not similarly situated"; hence former not entitled to credits against sentence for pretrial time held while at halfway house), cert. denied, 506 U.S. 1028, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992).
We know of no authority for the proposition that a defendant, restrained only by virtue of the wristlet program during hours of curfew, must be treated similarly to those who actually remain in jail pending disposition of criminal charges. See Reno v. Koray, 515 U.S. ___, ___-___, 115 S.Ct. 2021, 2022-23, 132 L.Ed.2d 46, 51 (1995) (defendant not entitled to credit for "official detention" under 18 U.S.C. § 3585(b) when ordered "confined to a community treatment center" as a condition of bail); Moreland v. United States, supra, 968 F.2d at 657-61 (defendant not entitled to credit for preconviction time spent in a halfway house); United States v. Wickman, 955 F.2d 592, 593 (8th Cir.1992) (time spent "under pre-trial house arrest" as a condition of pretrial release does not constitute "official detention" and defendant "not entitled, as a matter of law, to sentence credit for time spent under those restrictions"); compare Johnson v. Smith, 696 F.2d 1334 (11th Cir.1983), distinguished in Moreland, supra, at 660. See also State v. Towey, 114 N.J. 69, 85-86, 552 A.2d 994 (1989) (condition of bail that defendant remain in psychiatric hospital where defendant was voluntarily when bail was set does not give rise to credits under R. 3:21-8 because it was not "`custodial' confinement"); State v. Mirakaj, 268 N.J. Super. 48, 52-53, 632 A.2d 850 (App.Div. 1993) (no R. 3:21-8 credit for presentence time defendant was required to live in convent as condition of bail); State v. Reyes, 207 N.J. Super. 126, 141-45, 504 A.2d 43 (App.Div.) (time spent in residential drug program as condition of probation not credited against sentence on violation of probation); certif. denied, 103 N.J. 499, 511 A.2d 671 (1986); State v. Smeen, 147 N.J. Super. 229, 233-34, 371 A.2d 93 (App.Div.) (no credit for time spent in residential drug treatment program as condition of bail), certif. denied, 74 N.J. 263, 377 A.2d 668 (1977).
*64 We also note that because defendant did not raise before the sentencing judge the present contention concerning entitlement to jail credits, we do not know if the judge would have accepted the negotiated disposition if he understood that over two-thirds of the mandatory parole ineligibility term he expected defendant to serve in custody would have been satisfied by participation in the wristlet program. Unlike "gap time" credits, N.J.S.A. 2C:44-5b(2), "jail time" credits under R. 3:21-8 reduce an ineligibility term as well as the sentence imposed. See Richardson v. Nickolopoulos, 110 N.J. 241, 242, 249-50, 540 A.2d 1246 (1988) (regarding "gap time" credits).
Defendant also contends that he should have been "exempt[ed]" from the mandatory provisions of the Graves Act. Defense counsel requested the assistant prosecutor to consent to an application under N.J.S.A. 2C:43-6.2, but did not address the subject to the trial judge or assignment judge after that request was denied.
Under N.J.S.A. 2C:43-6.2, the "escape valve" provision of the Graves Act, the prosecutor can make a motion to the assignment judge if he or she thinks it appropriate in "the interests of justice," or the trial judge can refer the matter to the assignment judge with the consent of the prosecutor. In such case the assignment judge may impose a probationary sentence with a custodial aspect or a reduced parole ineligibility term of one year.
State v. Alvarez, 246 N.J. Super. 137, 586 A.2d 1332 (App.Div. 1991), involved an application for consideration of the "escape valve" after the effective date of the statute and following sentencing. That case does not establish when and how the prosecutor's refusal to make application to the assignment judge, or to consent to such reference by the sentencing judge, should be challenged. This is not the occasion to examine that procedure. In this case, defendant neither made an application to the assignment judge before sentencing, nor sought review by the assignment judge thereafter. Nor did he ask the sentencing judge to refer the matter to the Assignment Judge. In Alvarez we held that a hearing need not be conducted on every application before the *65 assignment judge and that, in the post-sentencing setting there, a sufficient showing had to be made akin to an application under R. 3:21-10(c) before a hearing need be held. 246 N.J. Super. at 148-49, 586 A.2d 1332. Alvarez does not stand for the proposition that a defendant does not have to make a record to preserve an "escape valve" application.
In Alvarez, supra, we held that a defendant must make a showing that "the prosecutor arbitrarily or unconstitutionally discriminated against a defendant in determining whether the `interests of justice' warrant reference to the Assignment Judge" for sentencing under the "escape valve." State v. Alvarez, supra, at 147, 586 A.2d 1332. We have not had occasion to reexamine that test since the Supreme Court's decisions concerning review of similar decisions by the prosecutor under the Comprehensive Drug Reform Act. See State v. Shaw, 131 N.J. 1, 18, 618 A.2d 294 (1993); State v. Peters, 129 N.J. 210, 609 A.2d 40 (1992); State v. Vasquez, 129 N.J. 189, 609 A.2d 29 (1992); State v. Lagares, 127 N.J. 20, 33, 601 A.2d 698 (1992) (prosecutorial guidelines required; defendants can challenge prosecutor's decision as "an arbitrary and capricious exercise of prosecutorial discretion"). See also State v. Gonzalez, 254 N.J. Super. 300, 310, 603 A.2d 516 (App.Div. 1992). We find no basis on the record made for concluding that the prosecutor's decision not to endorse an application for sentencing under the "escape valve" was arbitrary, capricious or unduly discriminatory.
The judgment is affirmed.
NOTES
[1] Judge Newman participated in the reargument and disposition of the case.