**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4475-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT J. GARDNER, JR.,
a/k/a ROBERT J. GARDNER,

    Defendant-Appellant.

_____

Submitted January 24, 2022 – Decided February 25, 2022

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment Nos. 17-09-0754, 17-10-0821, and 18-03-0189.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Lila B. Leonard, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this appeal, defendant challenges three Judgments of Conviction (JOCs), entered in accordance with a negotiated plea agreement, for which he was sentenced to consecutive 365-day custodial terms, with 180 days of parole ineligibility. Those sentences were also ordered to run consecutively to an aggregate thirteen-year sentence imposed after defendant was convicted by a jury of second-degree manslaughter, fourth-degree assault by auto and third-degree possession of a controlled dangerous substance (CDS).

Defendant argues he entered the plea agreement based upon misadvice from his defense counsel, the State, and the court regarding the effect of his jail and gap-time credits. He also contends a remand is appropriate because the court failed to address substantively the factors enunciated in State v. Yarbough, 100 N.J. 627, 643-44 (1985), and did not consider recently enacted mitigating factor fourteen.

Defendant specifically argues:

> POINT I
>
> AS [DEFENDANT] WAS INCORRECTLY INFORMED THAT THE APPLICATION OF JAIL CREDITS IN THIS CASE WOULD RESULT IN A TIME-SERVED SENTENCE, [HE] MUST BE GIVEN THE OPPORTUNITY TO BE RESENTENCED, RENEGOTIATE THE PLEA AGREEMENT, OR WITHDRAW HIS GUILTY PLEA AND PROCEED TO TRIAL.

2

POINT II

A REMAND FOR RESENTENCING IS REQUIRED, BECAUSE NO <u>YARBOUGH</u> ANALYSIS WAS CONDUCTED BEFORE THE IMPOSITION OF FOUR CONSECUTIVE SENTENCES.

POINT III

THE LAW REQUIRING SENTENCING MITIGATION FOR YOUTHFUL DEFENDANTS DEMANDS RETROACTIVE APPLICATION BECAUSE THE LEGLISLATURE INTENDED IT, THE NEW LAW IS AMELIORATIVE IN NATURE, THE SAVINGS STATUE IS INAPPLICABLE, AND FUNDAMENTAL FAIRNESS REQUIRES RETROACTIVITY.

A. The Legislature Intended Retroactive Application.

B. The Savings Statute Does Not Preclude Retroactive Application of Ameliorative Legislative Changes, Like the One at Issue Here.

C. Retroactive Application of the Mitigating Factor Is Required as a Matter of Fundamental Fairness, and to Effectuate the Remedial Purpose of the Sentencing Commission's Efforts Regarding Juvenile Sentencing.

Defendant did not move before the court in the first instance to withdraw his guilty plea based on the misadvice noted, but the State concedes a remand is appropriate for the court to evaluate whether defendant's misunderstanding impacted his decision to plead guilty. We agree with the parties that a remand

3

is necessary under the circumstances for the court in the first instance to determine if it should accept or reject defendant's plea after considering defendant's reasonable expectations. If the court concludes defendant should be permitted to withdraw his plea, defendant may elect to proceed to trial or attempt to renegotiate his plea.

Regardless of the court's decision on the plea issue, we conclude defendant's sentence should be vacated and the matter remanded for resentencing because the court failed to engage in the necessary analysis mandated by Yarbough, nor did it consider the overall fairness of defendant's consecutive sentences in accordance with State v. Torres, 246 N.J. 246, 271 (2021). Finally, we conclude that at any resentencing, the court should apply youth mitigating factor fourteen.

I.

We discuss the complex procedural history to provide context for our opinion. In 2017 and 2018, defendant was charged in three separate indictments, Nos. 17-09-0754, 17-10-0821, and 18-03-0189 (the 2017 and 2018 indictments), with fourth-degree operating a motor vehicle during a period of a second or subsequent license suspension, under N.J.S.A. 2C:40- 26(b). He was also charged with related motor vehicle offenses for operating a vehicle under the

influence of liquor or drugs, N.J.S.A. 39:4-50, driving after a driver's license was suspended or revoked, N.J.S.A. 39:3-40, driving without a license, N.J.S.A. 39:3-10, reckless driving, N.J.S.A. 39:4-6, unsafe lane change, N.J.S.A. 39:4-88(b), operating a motor vehicle, person who has consumed alcohol while under age, N.J.S.A. 39:4-50.14, and failure to install an interlock device, N.J.S.A. 39:4-50.19(a).

Defendant pled guilty to the 2017 and 2018 indictments. As part of that plea agreement, the State agreed to dismiss the various motor vehicle offenses, as well an earlier charge of third-degree CDS possession alleged in a separate indictment, No. 16-03-203.

At the plea hearing, the State indicated that it was its "understanding that although we are asking for consecutive sentences it [has] come to the State's attention today that [defendant] has a substantial amount of credits, approximately 800 days, and will be entitled to all lawful application of those credits against these three Indictments." Defense counsel agreed but clarified that up to that date defendant had accrued "799 days of credit . . . on each one." He further indicated that he and defendant had "discussed [the plea] at length," and that it was his "understanding that, essentially, [defendant] would be finished serving these sentences on each of these, even though the State's plea

offer or the agreement . . . states that the sentences are to run consecutive, I believe." Defendant concurred that this was his understanding of the plea agreement.

Between the aforementioned plea and his sentencing on those indictments, defendant was sentenced on additional charges after an October 2019 jury trial. As noted, those convictions included second-degree manslaughter, N.J.S.A. 2C:11-4(b)(1), fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2), and third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1). For the manslaughter conviction, defendant received a nine-year term of imprisonment with an 85% parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. With respect to the assault conviction, defendant received a 365-day sentence, and for the possession conviction, a flat three-year sentence. All sentences were ordered to run consecutively, and the court awarded 821 days of jail credits.

Three months later, on March 2, 2020, defendant was sentenced on the 2017 and 2018 indictments. The court sentenced defendant in accordance with the plea agreement, and applied relevant aggravating and mitigating factors, even though all parties had agreed that defendant had already served his sentence under the plea agreement. Defense counsel represented to the court that he

6

understood defendant accrued 916 days of jail credit and the prosecutor and the judge both agreed, as reflected by the following colloquy:

> DEFENSE COUNSEL: So the . . . presentence report would say 827 days jail credit, plus 59. We also calculated, I believe, another 30 days?
>
> THE COURT: I calculated 30 . . .
>
> PROSECUTOR: It's right around there, 29, 30, yes.
>
> THE COURT: I'm ready to hear from Counsel if they think my math is incorrect.
>
> DEFENSE COUNSEL: I think that's correct. That would give us 916 days credit.

The judge and defense counsel next addressed how those credits would be applied to the consecutive sentences, and defense counsel stated his belief that defendant was entitled to 916 days on each consecutive count. The judge clarified, "Or it would give him 180, plus 180, plus 180 against the 96 – 916. Correct? Is that your argument? He wouldn't get 916 against each 180 . . . . So it would be 180 times four against the 916. Is that – is that your position?" Defense responded in the affirmative and further contended, even if defendant was "maxed out on each of these fourth-degree offenses it would be [eighteen] months. Then he still would – he'd be maxed out there."

7

A-4475-19

The court and the parties confirmed defendant's counsel's understanding as exhibited by the following exchange:

> THE COURT: 724 days is what he would have done under the four 180 – 180-day sentences. Is that correct?
>
> PROSECUTOR: That is correct.
>
> THE COURT: And he's done 916 days to date.
>
> PROSECUTOR: That is correct.
>
> THE COURT: Okay.
>
> PROSECUTOR: So, either way, it's applied . . . he would reach the max on –
>
> THE COURT: He's completed the time –
>
> PROSECUTOR: Yes.
>
> THE COURT: – for these matters in which I am going to sentence him today.

As noted, the court then sentenced defendant in accordance with his negotiated plea to identical sentences for each of the 2017 and 2018 indictments: 365 days incarceration, with 180 days parole ineligibility, with applicable fines and penalties. The court ordered these sentences to run consecutively to each other and to defendant's 2019 sentences related to his trial convictions.

On March 19, 2020, Rachel Fromhold of the New Jersey DOC wrote to the court and requested clarification with respect to defendant's jail credits

8

related to the 2017 and 2018 indictments. She expressed concern that defendant had been awarded "duplicate jail credits" for September 7, 2017 to December 5, 2019. She therefore suggested the DOC would remove jail credits for this time period from defendant's sentence on the 2017 and 2018 indictments. She also concluded that credits issued for August 2, 2017 to August 8, 2017 had been mistakenly applied to one of these indictments, as the applicable offense did not occur until August 17, 2017.

Upon receipt of the DOC's letter, the court discussed the issue with the prosecutor and defendant's trial counsel. The court explained to counsel that she "felt constrained by" State v. C.H., 228 N.J. 111 (2017), and would "grant any motion to vacate [defendant's] guilty plea," so that plea negotiations could "begin anew" or the matter would be set for trial. As noted, defendant did not file a motion to vacate his guilty plea, but instead filed a notice of appeal. The matter was assigned to the Excessive Sentencing Oral Argument calendar and later transferred to the plenary calendar on our order.

II.

In his first point, defendant argues that he entered his plea with respect to the 2017 and 2018 indictments based upon an incorrect belief that he had accrued sufficient jail credits to result in a time-served sentence. He therefore

maintains that he must be resentenced and permitted to renegotiate or withdraw from his plea, as the correct sentence "far exceed[s]" defendant's expectations.

Criminal defendants are entitled to receive credit for time served while in custody awaiting sentencing or while serving a sentence on charges unrelated to those for which they are being sentenced. See R. 3:21-8; N.J.S.A. 2C:44-5(b)(2). Depending on their custodial status, defendants are entitled either to jail credits or gap-time credits. See State v. Hernandez, 208 N.J. 24, 36 (2011) (first citing R. 3:21-8; then citing N.J.S.A. 2C:44-5(b)(2)). The award of jail and gap-time credit raises issues of law subject to de novo review. See State v. DiAngelo, 434 N.J. Super. 443, 451 (App. Div. 2014) (reviewing award of jail credits de novo); State v. L.H., 206 N.J. 528, 543 (2011) (reviewing award of gap-time credits de novo).

A defendant is awarded jail credits "for any time served in custody in jail ... between arrest and the imposition of sentence." R. 3:21-8(a); see also DiAngelo, 434 N.J. Super. at 451. "Jail credits are 'day-for-day credits'" that accrue from the time a defendant is placed in custody for an offense until she or he is sentenced for that offense. C.H., 228 N.J. at 117 (quoting Hernandez, 208 N.J. at 37); accord State v. McNeal, 237 N.J. 494, 499 (2019). Those credits apply to the "front-end" of a sentence. McNeal, 237 N.J. at 499 (citing C.H.,

228 N.J. at 117, 121). As such, they reduce the minimum mandatory term a defendant must serve before becoming eligible for parole. Ibid. (citing C.H., 228 N.J. at 117, 121).

The defendant in C.H. was originally sentenced to consecutive prison terms under two separate indictments and received a four-year term on one indictment and a ten-year term on the other, both subject to NERA. Defendant argued his jail credit should have been applied to his sentence for each indictment, irrespective of the consecutive nature of the sentences. C.H., 228 N.J. at 114-16. The trial court refused to apply to each sentence the jail credits earned while the defendant was in custody awaiting trial on both indictments, but we remanded for resentencing, concluding that defendant was entitled to double jail credits. Id. at 113. Our Supreme Court reversed, holding that the trial court had properly applied the jail credits only against the ten-year term. Id. at 121.

In doing so, the Court limited its holding in Hernandez to the extent it had been interpreted to require such double credits. C.H., 228 N.J. at 123. The Court explained that "double credit should not be awarded where a defendant is sentenced to consecutive sentences under separate indictments and receives the optimal benefits of jail credit for time spent in pre-sentence custody." Id. at 123.

Here, defendant was not entitled to additional jail credits for the three indictments and the motor vehicle summons to which he pled guilty, as he had previously benefited from those same jail credits as they were applied to his 2019 trial convictions. As noted, however, defendant contends that the misrepresentation and misapplication regarding his jail credits induced him to enter the plea with respect to the 2017 and 2018 indictments.

"A guilty plea may be accepted as part of a plea bargain when the court is assured that the defendant enters into the plea knowingly, intelligently and voluntarily." State v. Johnson, 182 N.J. 232, 236 (2005) (citing R. 3:9-2). "For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea." Ibid. Although a court is not responsible for informing a defendant of all consequences flowing from a guilty plea, at a minimum the court must ensure that the defendant is made fully aware of those "consequences that are 'direct' or 'penal.'" Ibid. (quoting State v. Howard, 110 N.J. 113, 122 (1988)).

If a defendant can demonstrate that his plea is based on misinformation that induced him to plead guilty, he will be permitted to withdraw his plea. State v. Taylor, 80 N.J. 353, 365 (1979); see also State v. Bellamy, 178 N.J. 127, 134 (2003). Any such misunderstanding or "mistaken belief" on the part of a

defendant must be "a material factor in the decision to plead guilty." State v. Kiett, 121 N.J. 483, 490 (1990). Thus, "[c]larity as to the direct and penal consequences of a defendant's guilty plea promotes the binding resolution of charges because it serves to ensure that a defendant's 'expectations [are] reasonably grounded in the terms of the plea bargain.'" Johnson, 182 N.J. at 237 (quoting State v. Marzolf, 79 N.J. 167, 183 (1979)).

Our Supreme Court has affirmed that "an incorrect calculation of a defendant's jail credits may impact the voluntariness of the guilty plea," State v. McNeal, 237 N.J. 494, 499 (2019), and a defendant is "entitled to withdraw a guilty plea if the court imposes a harsher sentence than that contemplated by the plea agreement," Bellamy, 178 N.J. at 135. We have similarly recognized that "a defendant's misunderstanding of credits may affect his understanding of the maximum exposure" and therefore a "guilty plea based on this misunderstanding may fail to satisfy the constitutional requirement that a plea be voluntarily, intelligently and knowingly entered, at least where the denial of the expected credits results in the imposition of a sentence longer in duration than the maximum contemplated." State v. Alevras, 213 N.J. Super. 331, 338 (App. Div. 1986).

The State urges us to limit any remand solely to permit the court to make factual findings and determine whether the misunderstanding of defendant's jail and gap-time credits was a material representation that affected his decision to plead guilty. We disagree that such a narrow remand is appropriate under the circumstances. Rather, defendant shall make an appropriate application to the court in the first instance, and depending on the court's decision, he may be permitted to withdraw his plea, proceed to trial, or attempt to renegotiate his plea. In the event of any resentencing, the court should comply with the Code of Criminal Justice, including a reconsideration of all relevant aggravating and mitigating factors, as well as the principles discussed in Point III.

### III.

In defendant's second point, he argues a remand for resentencing is independently required because the sentencing court did not consider the Yarbough factors before imposing consecutive sentences. We agree.

When deciding whether to impose concurrent or consecutive sentences, the court considers the following guidelines established in Yarbough:

> (a) the crimes and their objectives were predominantly independent of each other;
> (b) the crimes involved separate acts of violence or threats of violence;
> (c) the crimes were committed at different times or separate places, rather than being committed so closely

14

in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous.

[100 N.J. at 643-44.]

These factors are "qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff, 239 N.J. 321, 348 (2019) (citations omitted).

Our Supreme Court recently revisited Yarbough, reiterating that a "sentencing court's explanation of its evaluation of the fairness of the overall sentence is 'a necessary feature in any Yarbough analysis.'" Torres, 246 N.J. at 270 (quoting Cuff, 239 N.J. at 352 (2019)). In addition to engaging in a qualitative analysis of the Yarbough factors, Torres instructs trial judges to provide "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings." Id. at 268. Torres requires "an explanation for the overall fairness of a sentence by the sentencing court . . . to 'foster[ ] consistency'" and curtail "'arbitrary or irrational sentencing.'" Id. at 272 (quoting State v. Pierce, 188 N.J. 155, 166-67, (2006)).

Here, the court did not conduct any analysis of the Yarbough factors, nor did it provide an "explicit statement" as to the overall fairness of defendant's consecutive sentences. Accordingly, we vacate defendant's sentence and remand for the court to address the principles set forth in Yarbough and Torres at any resentencing.

IV.

In his third point, defendant argues he should be resentenced because the court failed to consider new mitigating factor fourteen. Again, we agree.

The New Jersey Legislature recently revised the sentencing criteria to require sentencing courts to consider a defendant's youthful status in mitigation of any aggravating factor if "defendant was under twenty-six years of age at the time of the commission of the offense." L. 2020, c. 110 (eff. Oct. 19, 2020). As such, N.J.S.A. 2C:44-1(b)(14) requires courts to consider a defendant's youth as an independent factor in the sentencing calculus. Defendant further argues this factor should apply retroactively. We need not reach the retroactivity argument, however, as there exists an independent basis for defendant to be resentenced, which requires the resentencing judge to "view defendant as he stands before the court on that day." State v. Randolph, 210 N.J. 330, 354 (2012).

In <u>State v. Bellamy</u>, 468 N.J. Super. 29, 45 (App. Div. 2021), we remanded for resentencing to permit the sentencing court to consider previously undisclosed reports from the Division of Child Protection and Permanency records and reconsider the aggravating and mitigating factors before a new judge. Absent this independent basis to remand and resentence defendant, however, we held that the new mitigating factor would not apply retroactively. <u>Id.</u> at 48. Because the defendant in <u>Bellamy</u> had "yet to incur a penalty," she was entitled to application of the new mitigating factor at her resentencing. <u>Id.</u> at 45.

The <u>Bellamy</u> court also limited its holding regarding the retroactive effect of the new mitigating factor, emphasizing "cases in the pipeline in which a youthful defendant was sentenced before October 19, 2020" are not to be "automatically entitled to a reconsideration based on the enactment of this statute alone." <u>Bellamy</u>, 468 N.J. Super at 47–48. Here, as noted, a remand is required for the court to conduct a <u>Yarbough</u> and <u>Torres</u> analysis. Therefore, at any resentencing, the court must sentence defendant as he stands before it and apply youth mitigating factor fourteen.

Reversed and remanded for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4475-19