NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3887-15T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JOHN A. VICARI, a/k/a
JOHN ARTHUR VICARI,

 Defendant-Appellant.
_______________________________

 Submitted May 25, 2017 - Decided July 6, 2017

 Before Judges Lihotz and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Atlantic County, Indictment No.
 15-04-1036.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Ruth E. Hunter, Designated
 Counsel, on the brief).

 Damon G. Tyner, Atlantic County Prosecutor,
 attorney for respondent (John J. Santoliquido,
 Assistant Prosecutor, on the brief).

PER CURIAM

 Defendant John A. Vicari pled guilty to second-degree

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-

4(a), after being indicted for this and other offenses. According
to the State's plea offer, all other charges would be dismissed

and the State would recommend a minimum five-year sentence, subject

to a forty-two-month period of parole ineligibility, pursuant to

the Graves Act, N.J.S.A. 2C:43-6(c).

 Prior to sentencing, defendant, a first-time offender, filed

a request for the prosecutor to waive the mandatory minimum

sentence, in favor of a probationary sentence, or alternatively,

to reduce the period of parole ineligibility, as provided by an

amendment to the Graves Act. See N.J.S.A. 2C:43-6.2 (Section

6.2). The prosecutor rejected the request, and defendant sought

review by the Presiding Judge of the Criminal Part. The judge

reviewed the matter and issued an oral opinion, reduced to writing,

on April 15, 2016. The judge concluded the prosecutor's decision

not to request a waiver under Section 6.2 did not represent a

patent and gross abuse of discretion. The judge imposed sentence

in accordance with the recommendation in the plea agreement.

 On appeal, defendant argues:

 THIS COURT SHOULD VACATE THE ORDER DENYING
 DEFENDANT'S APPLICATION UNDER THE GRAVES ACT
 ESCAPE VALVE, N.J.S.A. 2C:43-6.2, AND REMAND
 FOR RESENTENCING. (Raised Below).

 Following review, we reject defendant's arguments challenging

the denial of a Graves Act waiver to provide a probationary

sentence. However, we remand for further review of the denial of

 2 A-3887-15T4
a Section 6.2 waiver to reduce the mandatory period of parole

ineligibility, implicating weighing of the applicable aggravating

and mitigating factors, because we conclude the judge's analysis

was flawed.

 During the February 2, 2016 plea hearing, defendant

voluntarily sought to plead guilty, accepting the terms of the

negotiated plea agreement. He testified during the hearing, after

waiving his right to call witnesses or proceed to trial. He

confirmed he read each page and understood the plea agreement,

including the maximum sentence he faced if convicted of the charged

offense, which he understood was a crime governed by the Graves

Act. Defendant also understood the State recommended a sentence

of five years with a forty-two-month period of parole

ineligibility. In addition, he agreed he had sufficient time to

consult and review the agreement terms with his attorney, who

answered all of his questions and whose advice, regarding the

agreement and plea, he found satisfactory.

 Defendant confirmed he was pleading guilty because he was

guilty. He provided the following factual basis supporting his

plea.

 On December 14, 2014, defendant, while in his residence

located on Fifth Avenue in Estelle Manor, engaged in a domestic

dispute with his roommate, Ed Raff. Defendant kept a Smith &

 3 A-3887-15T4
Wesson .357 Magnum in his bedroom, which he lawfully owned and was

licensed to possess. He retrieved the gun and aimed the weapon

at Raff, intending to frighten or threaten him.1 Defendant

admitted his purpose in retrieving the weapon was unlawful. 2

 Defendant requested the prosecutor waive the mandatory

minimum penalties imposed by the Graves Act. In addition to

advancing the factors he believed supported waiver, he also

identified similar cases where the prosecutor requested waiver.

Notwithstanding defendant's presentation, the prosecutor declined

to request waiver. Defendant sought review by the court.

 The judge reviewed the written submissions and determined a

hearing was warranted. At the close of arguments, the judge

entered a bench opinion, which he later reduced to writing. He

concluded the prosecutor's decision not to request a Section 6.2

waiver was not discriminatory or an abuse of discretion. The

judge imposed the sentence as recommended in the plea agreement.

This appeal ensued.

1
 The pre-sentence report recounts defendant's statement that
after he threatened Raff he pointed the gun at his own head and
threatened to kill himself.
2
 Ultimately police arrested defendant, who was driving his
vehicle while under the influence of alcohol. Defendant admitted
he drank "about one-half pint," and was impaired when police
stopped his car.

 4 A-3887-15T4
 Defendant's appeal initially was listed on this court's

September 21, 2016 excessive sentence oral argument calendar. R.

2:9-11. The reviewing panel ordered the matter relisted for

plenary review.

 "Appellate review of sentencing decisions is relatively

narrow and is governed by an abuse of discretion standard." State

v. Blackmon, 202 N.J. 283, 297 (2010). We do not defer to legal

determinations made by the trial judges, State v. Bolvito, 217

N.J. 221, 228 (2014), on these issues our review is de novo. State

v. Gandhi, 201 N.J. 161, 176 (2010).

 In adopting the Graves Act, N.J.S.A. 2C:43-6(c), the

Legislature intended to impose significant mandatory penalties for

certain illegal acts involving weapons.3 State v. Robinson, 217

N.J. 594, 607 (2014). A person convicted of one of the designated

crimes:

3
 N.J.S.A. 2C:43-6(c) applies to those defendants convicted of:
possession of a sawed-off shotgun or defaced firearm, N.J.S.A.
2C:39-3(b), (d); possession of a firearm for an unlawful purpose,
N.J.S.A. 2C:39-4(a); possession of a firearm while committing
certain drug-related or bias intimidation offenses, N.J.S.A.
2C:39-4.1(a); unlawful possession of a machine gun, handgun, rifle
or shotgun, or assault firearm, N.J.S.A. 2C:39-5(a), (b), (c),
(f); certain persons not to have weapons, N.J.S.A. 2C:39-7(a),
(b)(2), (b)(3); manufacture, transport, disposition and defacement
of machine guns, sawed-off shotguns, defaced firearms, or assault
firearms, N.J.S.A. 2C:39-9(a), (b), (e), (g). The statute also
applies to defendants who used or were in possession of a firearm
while committing, attempting, or fleeing from other crimes.

 5 A-3887-15T4
 who, while in the course of committing or
 attempting to commit the crime, . . . used or
 was in possession of a firearm . . . shall be
 sentenced to a term of imprisonment by the
 court. The term of imprisonment shall include
 the imposition of a minimum term. The minimum
 term shall be fixed at one-half of the
 sentence imposed by the court or 42 months,
 whichever is greater, or 18 months in the case
 of a fourth degree crime, during which the
 defendant shall be ineligible for parole.

 [N.J.S.A. 2C:43-6(c).]

 The significant punishment imposed by the Graves Act may be

mitigated, as provided by an amendment, codified as N.J.S.A. 2C:43-

6.2, which:

 was enacted to authorize "the reduction of
 sentence for a person convicted of a first
 offense under the Graves Act if the prosecutor
 makes a motion before the assignment judge
 stating that the interests of justice would
 not be served by the imposition of the
 mandatory minimum term under the Graves Act."
 Senate Law, Pub. Safety & Def. Comm.,
 Statement to S. No. 827 (1988); see also
 Assembly Judiciary Comm., Statement to S. No.
 827 (1988).

 [State v. Nance, 228 N.J. 378, 391 (2017).]

Section 6.2 authorizes a prosecutor to move before the Assignment

Judge for a waiver of the Graves Act's mandatory minimum term of

incarceration for certain first-time offenders. N.J.S.A. 2C:43-

6.2. Section 6.2 empowers the Assignment Judge, or if so

designated with the authority, the presiding judge of the Criminal

 6 A-3887-15T4
Part,4 to "place the defendant on probation . . . or reduce to one

year the mandatory minimum term of imprisonment during which the

defendant will be ineligible for parole." Ibid.

 Here, the Criminal Presiding Judge, as the delegated designee

of the Assignment Judge, conducted a hearing to review the

prosecutor's denial to seek a Section 6.2 waiver.5 See State v.

Watson, 346 N.J. Super. 521, 535 (App. Div. 2002) (reaffirming a

defendant may seek application by arguing to the Assignment Judge

the prosecutor's refusal is a patent and gross abuse of discretion

(citing State v. Alvarez, 246 N.J. Super. 137, 147 (App. Div.

1991))).

 Identifying the purpose of the Graves Act as "deterrence and

only deterrence," State v. Des Marets, 92 N.J. 62, 68 (1983), the

judge noted the "escape valve," set forth in N.J.S.A. 2C:43-6.2,

may be utilized in those instances where imposition of the

4
 See Administrative Office of the Courts, Memorandum, Motions
for Waiver of the Graves Act Mandatory Minimum Term and Sentencing
– Clarification Based on State v. Nance (June 12, 2017) (clarifying
Assignment Judge's authority on Graves Act waiver issues).
5
 "Pursuant to a 2008 memorandum issued by the Administrative
Office of the Courts, an assignment judge may delegate his or her
authority under section 6.2 to the presiding judge of the Criminal
Part." Nance, supra, 228 N.J. at 392 (citing Administrative Office
of the Courts, Memorandum, Motions in Graves Act Cases - Delegable
by Assignment Judge to Criminal Presiding Judge (Nov. 21, 2008);
see also R. 1:33-6(a) (authorizing delegation of assignment
judge's authority under court rules to presiding judge)). See
also R. 1:33-6(a).

 7 A-3887-15T4
mandatory minimum term required by the Graves Act was deemed

"unnecessarily and unproductively harsh." Cannel, New Jersey

Criminal Code Annotated, cmt. 2 on N.J.S.A. 2:43-6.2 (2017).

 The judge identified defendant's lack of a prior criminal

record and his lawful ownership of the weapon used against the

victim, as factors weighing in favor of the waiver. However, when

examining the facts surrounding the crime, the judge concluded the

totality of the facts presented neither "extraordinary or

compelling reasons" to deviate from the Legislative policy

underpinning the Graves Act.

 The judge also evaluated the three "extraordinary or

compelling reasons" identified in the Attorney General's Directive

to law enforcement. Attorney General, Directive to Ensure Uniform

Enforcement of the "Graves Act," (Oct. 23, 2008, as corrected Nov.

25, 2008) (the Directive).6 The Directive was issued "to channel

prosecutorial discretion" in cases governed by the Graves Act.

State v. Benjamin, 228 N.J. 358, 372 (2017) (citing State v.

Vasquez, 129 N.J. 189, 196 (1999)).

 The Directive was designed to "ensure statewide uniformity

in the enforcement of the Graves Act, and to provide reasonable

incentives for guilty defendants to accept responsibility by

6
 The Directive is available at http://www.state.nj.us/
lps/dcj/agguide/pdfs/Graves-Act-Oct23-2008.pdf.

 8 A-3887-15T4
pleading guilty in a timely manner so as to maximize deterrence

by ensuring the swift imposition of punishment." Id. at 4.

Additionally, the Directive includes standards guiding the

discretionary determination when seeking a Section 6.2 waiver.

Id. at 12-13.

 The judge recited the Directive identified "extraordinary and

compelling reasons that take the case outside the heartland of the

legislative policy to deter unauthorized gun possession" to

warrant recommendation of a probationary sentence. These include:

(1) a defendant's lack of prior criminal involvement; (2) the

firearm was not loaded; and (3) the totality of the circumstances

make clear the firearm posed no risk to police or public safety.

Ibid. Here, although defendant satisfied the first instance, he

could not meet either of the other two.

 On appeal, defendant urges the judge erroneously concluded

the prosecutor appropriately declined to seek waiver, arguing: (1)

the decision does not serve the interest of justice; (2) the

standard imposed of "extraordinary and compelling" reasons for a

waiver was incorrect; and (3) the decision incorrectly applied

aggravating and improperly denied applicable mitigating factors.

We consider these assertions.

 Because the prosecutor did not agree to seek a Section 6.2

waiver, the burden rests upon defendant, who must show "the

 9 A-3887-15T4
prosecutor arbitrarily or unconstitutionally discriminated"

against a defendant when making the determination. State v.

Mastapeter, 290 N.J. Super. 56, 65 (App. Div.), certif. denied,

146 N.J. 569 (1996). The judicial discretion embodied in

examination of a prosecutor's Section 6.2 waiver decision -- that

is, whether a custodial sentence "does not serve the interest of

justice" -- is an objective legal standard based on the facts

presented.

 Initially, defendant asserts Section 6.2 provides a

"presumption of probation" for a first-time offender. This claim

is defeated by the unambiguous statutory language and is belied

by the Legislature's 2013 amendment to N.J.S.A. 2C:43-6(c), which

signaled a decision to impose tougher penalties for gun offenses

by increasing the mandatory minimum term from three years to the

current forty-two months. See P.L. 2013, c. 113 § 2, effective

Aug. 8, 2013; see also Nance, supra, 228 N.J. at 396 (rejecting

arguments suggesting Section 6.2 permits lighter sentences for

first-time offenders who act with a gun than for those who do not

use a gun). Accordingly, although Section 6.2 waivers are granted

solely to first-time offenders, not all first-time offenders are

granted Section 6.2 waivers.

 We also reject defendant's claim the trial judge imposed a

higher standard of proof for application of waiver than required

 10 A-3887-15T4
by the statute's "in the interests of justice" standard. Rather,

we conclude the trial judge correctly analyzed the prosecutor's

waiver decision and it was neither arbitrary nor a product of

unconstitutional discrimination.

 The interest of justice standard has a very limited

application and requires a court to consider whether "the sentence

reflect[s] the Legislature's intention" because "the severity of

the crime [is] the most single important factor in the sentencing

process." State v. Megargel, 143 N.J. 484, 500 (1996). A judge

"must consider the nature of and the relevant circumstances

pertaining to the offense[,]" including "facts personal to the

defendant" such as the "defendant's role in the incident, to

determine the need to deter him from further crimes and the

corresponding need to protect the public from him." Id. at 500-

01; see also Directive, supra, at 8.

 Defendant pled guilty to, and was convicted of, a second-

degree crime. As directed by the Supreme Court, the first

consideration is the presumption of incarceration, stated in

N.J.S.A. 2C:44-1(d).7 See Nance, supra, 228 N.J. at 395-96. ("We

7
 N.J.S.A. 2C:44-1(d) provides:

 The court shall deal with a person who has
 been convicted of a crime of the first or
 second degree . . . by imposing a sentence of

 11 A-3887-15T4
construe section 6.2 and N.J.S.A. 2C:44-1(d) so as to harmonize

the two components of the Code's sentencing scheme. Nothing in

either provision suggests that a Graves Act waiver exempts a

defendant convicted of a first or second-degree offense from the

presumption of incarceration."). That said, the Court has also

explained the special circumstances when it is appropriate to

allow a probationary term, even for a crime with a presumption of

incarceration. See State v. Jarbath, 114 N.J. 394, 414-15 (1989).

 Section 6.2 limits application of waiver to first-time

offenders where the circumstances of the offense show "the

interests of justice would not be served by the imposition of the

mandatory minimum term under the Graves Act." Nance, supra, 228

N.J. at 391. A review of the Directive relied upon by the

prosecutor and noted by the trial judge, also emphasized the

circumstances of the offense significantly dictates whether waiver

in favor of a probationary sentence should be requested by the

State. Directive, supra, at 12.

 Here, figuring most prominently in the consideration not to

seek a Section 6.2 waiver were the circumstances surrounding this

 imprisonment unless, having regard to the
 character and condition of the defendant, it
 is of the opinion that his imprisonment would
 be a serious injustice which overrides the
 need to deter such conduct by others.

 12 A-3887-15T4
offense. Defendant, in anger, retrieved a loaded gun and aimed

it at the victim to threaten and intimidate him to act as defendant

commanded. Even though defendant had not previously committed any

crime, this offense most assuredly was the kind of conduct the

Graves Act sought to deter: the misuse of a licensed firearm by

threatening the life of another, placing the victim, the actor,

and the public in danger. As the trial judge's opinion suggests,

the facts in this case include no basis to support the interest

of justice requires a probationary sentence.

 The judge relied on the Directive on this issue. The

Directive instructs prosecutors not to "move for or approve a

sentence of probation except for extraordinary and compelling

reasons that take the case outside the heartland of the legislative

policy to deter gun possession . . . ." Directive, supra, at 12.

 Defendant argues "extraordinary and compelling reasons"

equates to the "serious injustice" standard, which erroneously

enhances the statute's lesser standard of "in the interests of

justice." Defendant seeks reversal because the judge mistakenly

accepted this standard, which employed a higher burden.

 Importantly, the serious injustice standard is found in

N.J.S.A. 2C:44-1(d), which we noted above presumptively imposes

incarceration for conviction of first- and second-degree offenses.

See State v. Roth, 95 N.J. 334, 358 (1984) (holding the "serious

 13 A-3887-15T4
injustice" exception to the presumption of imprisonment applies

only in "truly extraordinary and unanticipated circumstances.").

The Supreme Court has recently reviewed the interrelationship of

N.J.S.A. 2C:44-1(d) and Section 6.2. See Nance, supra, 228 N.J.

at 396. Noting N.J.S.A. 2C:44-1(d) "imposes a high standard that

must be overcome before a first- or second-degree offender may be

sentenced to a non-custodial term[,]" the court clarified the need

to "harmonize" Section 6.2 and N.J.S.A. 2C:44-1(d) as "two

components of the Code's sentencing scheme." Id. at 395. Thus,

"[b]y considering the standard of N.J.S.A. 2C:44-1(d) in deciding

between the probationary and custodial sentences authorized by

[S]ection 6.2, . . . [the court] achieves the legislative

objectives of both provisions." Id. at 396. Further, "a contrary

construction would produce unfair and anomalous results." Ibid.

 In this light, without question, Section 6.2's probationary

waiver for a Graves Act offense applies to a very narrow group of

cases. The Attorney General's characterization of such cases as

presenting "extraordinary and compelling reasons" aligns with the

Court's interpretation. When examining imposition of a sentence

for a first- or second-degree crime accompanied by the presumption

of incarceration, the Court has repeatedly advised: "To forestall

imprisonment a defendant must demonstrate something extraordinary

or unusual, something idiosyncratic, in his or her background."

 14 A-3887-15T4
State v. Nwobu, 139 N.J. 236, 252 (1995) (quoting State v. Jabbour,

118 N.J. 1, 7 (1990)).

 We abide the Court's discernment of the Legislature's intent,

and may not enhance the statutory application as broadly as

suggested by defendant.

 The efficacy and perhaps even the wisdom of
 this approach may not be clear to some, but
 the message intended by the Legislature could
 hardly be clearer: if you are convicted of a
 crime against a person while using or
 possessing a firearm, you will go to prison
 for at least three years [now forty-two
 months]. Period. The Graves Act aims at
 deterrence through the eventually wide spread
 knowledge that one who is convicted of using
 or possessing a firearm while committing any
 one of a number of crimes cannot, and will
 not, escape a mandatory minimum imprisonment
 . . . .

 [Des Marets, supra, 92 N.J. at 73.]

 It also is important to note the Legislature vested the

initial decision to seek waiver with the prosecutor. N.J.S.A.

2C:42-6.2 (providing the prosecutor decides whether to seek a

Graves Act waiver and may advocate a particular sentence). As in

other prosecutorial decisions, a reviewing court lacks authority

"to substitute [its own] discretion for that of the prosecutor[.]"

State v. Waters, 439 N.J. Super. 215, 237 (App. Div. 2015) (quoting

Nwobu, supra, 139 N.J. at 253) (discussing prosecutor's decision

to permit pre-trial intervention (PTI) for gun possession

 15 A-3887-15T4
offense). "Rather, courts must 'view the prosecutor's decision

through the filter of the highly deferential standard of review.'"

Id. at 237-38 (quoting State v. Wallace, 146 N.J. 576, 589 (1996)).

 In Waters, this court evaluated the prosecutor's rejection

of the defendant's request for PTI for a Graves Act offense, also

guided by the Directive, and commented: "We need not decide whether

[the] 2008 Directive's example ever compels a prosecutor to consent

to PTI. It is sufficient to hold here that it does not do so

where the defendant does not meet all the criteria in the example,

or where there are other facts unfavorable to the defendant on

which the prosecutor can properly rely as a basis for denying

PTI." Id. at 237.

 Such is the case regarding the matter at hand. Defendant did

not meet the necessary criteria to warrant a waiver for a

probationary sentence. State v. Watkins, 193 N.J. 507, 520 (2008).

The trial judge considered the applicable case law and the guidance

provided in the Directive. On this point, we conclude, as did the

trial judge, the prosecutor's decision was not arbitrary and did

not amount "to unconstitutional discrimination or denial of equal

protection." Watson, supra, 346 N.J. Super. at 535; see also

Mastapeter, supra, 290 N.J. Super. at 65 (holding to succeed on

such a motion a defendant must show the prosecutor arbitrarily or

unconstitutionally discriminated against a defendant in

 16 A-3887-15T4
determining whether the "interests of justice" warrant reference

for sentencing under Section 6.2).

 We cannot reach the same conclusion regarding the judge's

analysis of whether the prosecutor's denial of the Section 6.2

waiver provision permitting imposition of a one-year period of

parole ineligibility was arbitrary. This review implicates

consideration of applicable aggravating and mitigating factors.

Here, we conclude the judge erred in the aggravating and mitigating

factor analysis. Consequently, we are constrained to remand for

review of the parole ineligibility term.

 In making his review of whether the facts support a Section

6.2 waiver of the mandatory parole ineligibility period, the judge

adopted the prosecutor's arguments for application of aggravating

and mitigating factors, N.J.S.A. 2C:44-(1)(a), (b). The judge

agreed the facts supported aggravating factors: one, "[t]he nature

and circumstances of the offense, and the role of the actor

therein, including whether or not it was committed in an especially

heinous, cruel, or depraved manner"; three, the risk that the

defendant will commit another offense; and nine, the need for

deterrence. N.J.S.A. 2C:44-1(a)(1), (3), (9). He also applied

mitigating factor seven, as defendant had previously led a law

abiding life and not committed any prior criminal offense.

N.J.S.A. 2C:44-1(b)(7).

 17 A-3887-15T4
 The judge apparently rejected defendant's challenges to the

use of aggravating factors one and three, as well as his arguments

for application of mitigating factors four, substantial grounds

which tended to excuse or justify defendant's conduct, though

failing to establish a defense; eight, defendant's conduct was the

result of circumstances unlikely to recur; and nine, the character

and attitude of the defendant indicate that he is unlikely to

commit another offense, N.J.S.A. 2C:44-1(b)(4), (8), (9).8

 Finally, the judge concluded the applied aggravating factors

substantially outweighed the mitigating factors. Therefore, he

determined the State's rejection of the request to reduce the

period of parole ineligibility to one year was justified, and

suggested this matter was exactly the type of conduct the Graves

Act intended to deter — a person who arms himself or herself with

a loaded weapon before committing a crime. See Des Marets, supra,

92 N.J. at 68-69.

 Although "aggravating and mitigating factors play no part in

the decision to impose a minimum term in Graves Act cases[,]" a

court may consider the aggravating and mitigating factors in

setting the length of the minimum term. State v. Towey, 114 N.J.

69, 82 (1989); see also Nance, supra, 228 N.J. at 390-91 ("Although

8
 At the hearing, the parties relied principally upon their
written submissions, which were not included in the record.

 18 A-3887-15T4
the mandatory minimums are prescribed by the Graves Act, the

sentencing court weighs the aggravating and mitigating factors,

N.J.S.A. 2C:44-1(a) and (b), and exercises discretion over other

aspects of the sentence.").

 The Directive instructs prosecutors that a reduction of the

minimum term of parole ineligibility to one year should not be

recommended when "the aggravating factors applicable to the

offense[,] conduct[,] and offender outweigh any applicable

mitigating circumstances[.]" Directive, supra, at 13. Therefore,

appropriate application of these factors is significant when

deciding to request waiver.

 Following our review of the record, we agree with defendant:

the judge inappropriately applied aggravating factor one and must

consider whether mitigating factors, particularly factor nine,

apply in order to determine whether the prosecutor appropriately

declined to seek waiver.

 The Legislature "chose comprehensive language to define

aggravating factor one." State v. Lawless, 214 N.J. 594, 609

(2013).

 Under this factor, the sentencing court
 reviews the severity of the defendant's crime,
 "the single most important factor in the
 sentencing process," assessing the degree to
 which defendant's conduct has threatened the
 safety of its direct victims and the public.
 "The paramount reason we focus on the severity

 19 A-3887-15T4
 of the crime is to assure the protection of
 the public and the deterrence of others."
 "The higher the degree of the crime, the
 greater the public need for protection and the
 more need for deterrence."

 In that inquiry — focused on the magnitude of
 the offense as a measure of the need to shield
 the public and deter future crimes — courts
 applying aggravating factor one focus on the
 gravity of the defendant's conduct,
 considering both its impact on its immediate
 victim and the overall circumstances
 surrounding the criminal event.

 [Id. at 609-10 (citations omitted).]

 In this matter, the only explanation recited to apply this

was because defendant pointed "a loaded handgun at his longtime

friend." However, the use of the weapon is an element of the

offense for which he was convicted. Therefore, identifying the

same fact as an aggravating factor engages in impermissible double

counting. See State v. Kromphold, 162 N.J. 345, 353-54 (2000)

(holding finding of an aggravating sentencing factor cannot be

premised solely upon an essential element of the crime for which

defendant is being sentenced; such "double-counting" is not

permitted).

 Defendant also attacks application of aggravating factor

three, the risk of re-offense, particularly because defendant had

led a law-abiding life, as supported by application of mitigating

factors seven. He argues he achieved sobriety, emphasizing his

 20 A-3887-15T4
alcohol abuse impaired his judgment and led to his commission of

the offense. In applying aggravating factor three, the judge

found defendant's alcohol abuse and the circumstances of this

offense, suggested a risk defendant would reoffend, but he gave

this factor less weight. The judge did not mention defendant's

treatment.

 We reject the notion aggravating factor three cannot coexist

with mitigating factor seven. This is not correct. See State v.

Case, 220 N.J. 49, 67 (2014) ("[W]e do not presume that aggravating

factor three cannot coexist with mitigating factor seven

. . . ."); State v. Varona, 242 N.J. Super. 474, 491 (App. Div.),

certif. denied, 122 N.J. 386 (1990). The question for review is

whether the cited factual findings are grounded in competent,

credible evidence in the record. Roth, supra, 95 N.J. at 363.

 Here, even though defendant had not previously broken the

law, the judge explained, defendant's alcohol abuse was not an

isolated or aberrant event. Also, defendant's uncontrolled anger

directly led to the criminal conduct. We conclude these facts

evinced by the record, sufficiently support the finding to apply

aggravating factor three, which the judge accorded little weight.

 We reject as meritless defendant's challenge to the

application of aggravating factor nine, the need for general and

specific deterrence. R. 2:11-3(e)(2).

 21 A-3887-15T4
 Next, defendant states the judge erroneously rejected

requested applicable mitigating factors. Mitigating factors that

are called to the court's attention should not be ignored, see

Blackmon, supra, 202 N.J. at 297, "and when 'amply based in the

record . . . , they must be found[.]'" Case, supra, 220 N.J. at

64 (quoting State v. Dalziel, 182 N.J. 494, 504 (2005)). Moreover,

during the deliberative process, a judge, must state the basis for

rejecting a claimed mitigating factor. Ibid.

 Assuming defendant's written submissions sought application

of mitigating factors four, eight, and nine, the judge failed to

mention why he determined them inapplicable. Although we could

infer a basis to reject mitigating factor four and eight from the

facts and the judge's findings, we choose not to do so. We also

cannot infer what evidential support was used to reject evidence

directed to application of mitigating factor nine, including

defendant's completion of alcohol abuse treatment and counseling,

his age, and years of continuous employment. Since we conclude

remand is necessary because of the error in applying aggravating

factor one, we also require the judge to provide the factual review

of mitigating factors advanced by defendant.

 Because of the need to reevaluate the applicable aggravating

and mitigating factors, we remand for additional review of whether

a Section 6.2 mitigation of the period of parole ineligibility is

 22 A-3887-15T4
appropriate. The judge must review the propriety of the

prosecutor's denial of the request to seek imposition of the

minimum Graves Act parole ineligibility period, once eliminating

aggravating factor one and after evaluating and weighing whether

evidence supports application of the requested mitigating factors.

 Affirmed in part and remanded in part.

 23 A-3887-15T4